BYERS BROS. ET AL. V. W. B. WALLACE ET AL.

No. 151.

1. **Practice—Charge.**

A court has the right to assume the existence of a material fact only when the evidence is uncontradicted and of that conclusive nature that a jury could not find otherwise ................................................ 507

2. **Presumption.**

From the fact that a headright certificate for one league was granted to heirs, it will be presumed that the grantee was a married man, and that the officers issuing the certificate had done their duty under the law granting headrights for land .... . .... ...................................... 507

3. **Contradictory Testimony by Witness.**

Where the testimony by a witness upon a material issue is contradictory, the jury are not required to act upon the testimony of such witness. See example..... .......... .. ......................................·.......... 508

4. **Burden of Proof in Trespass to Try Title.**

In action of trespass to try title, the plaintiff must recover upon the strength of his own title and not upon the weakness of the defendant's title; and when defendant offers evidence tending to disprove the plaintiff's case, then it becomes a question of the preponderance of the evidence, which must be made on plaintiff's side, or the jury should find for the defendant, even should the testimony be evenly balanced. It was error to refuse an instruction to that effect in such case............................ ...... 509

5. **Hearsay.**

See example of testimony held hearsay, and not upon question of pedigree.. 510

6. **Self-Serving Declarations.**

Declarations by ancestor of plaintiffs made as to death of a nephew, that said nephew had died in Texas without nearer kin than the declarant, and made after the death of said alleged nephew, are self-serving and not competent against other claimants as heirs of said alleged nephew.......... ....... 510

7. **Hearsay—Pedigree.**

Litigation between two sets of claimants for lands granted to heirs of Wm. Wallace, who fell with Fannin at Goliad. The plaintiffs claimed as heirs of a soldier from Georgia, a member of a named company. The defendants claimed as heirs of a soldier from Virginia, member of same company. On trial it was competent to read in evidence contents of a letter from a cousin of the Virginia soldier (who himself fell at Goliad), written from Goliad a few days before the massacre, that "Wm. Wallace, the cousin of the writer, was there and was a member of a company from Huntsville, Alabama." This was competent, as well for the purpose of identification as of pedigree. The statements as to time, place, and residence are admissible as being so closely related to, if not in fact part of, pedigree, that the same rules of law are applicable............................................ 510

8. **Case Overruled.**

Smith v. Shinn, 58 Texas, 1, overruled as to admission of hearsay evidence affecting identity when closely connected with pedigree.................. 512

9. **Certificate from Adjutant-General's Office.**

We find no law authorizing the Adjutant-General to give certificate to the fact that proofs of heirship and certificate had been filed in his office. Such certificate is not competent evidence ..................................... 512

**10. Administration Proceedings—Assertion of Claim.**
As a circumstance, it was competent to prove administration proceedings by which the widow was asserting such relationship and had procured an augmentation certificate in name of her husband, and that she was asserting claim thereto. So, although the proceedings were void.................. 513

ON REHEARING.

**11. Case Limited—Self-Serving Declarations.**
Simpson v. Fowler, 79 Texas, 614, limited, as to the rule as to declarations in interest as to pedigree .......................................... 516

**12. Self-Serving Declarations.**
Deceased soldiers were entitled to land under a law in force at the massacre at Goliad; and the declarations of an alleged uncle of a soldier killed at Goliad, that the soldier was a nephew of declarant and had left no nearer kin, were self-serving and incompetent in evidence against others claiming as heirs. Authorities discussed................................... 516

ERROR to Court of Civil Appeals for Second District, in an appeal from Clay County.

The opinion contains a sufficient statement.

*Woods & Mayfield, J. E. Bomar,* and *W. O. Davis,* for plaintiffs in error.—Counsel cited: Stovall v. Carmichael, 52 Texas, 383; Ins. Co. v. Troy, 77 Texas, 225; Railway v. Dawkins, 77 Texas, 228; Phillipowski v. Spencer, 63 Texas, 608; Grant v. Taylor, 7 Har. & M., 211; Dullaven v. Dullaven, 17 Ind., 238; Chapman v. Chapman, 2 Conn., 238; Blackburn v. Crawford, 3 Wall., 162; Smith v. Shinn, 58 Texas, 1; Odom v. Woodward, 74 Texas, 41; Newby v. Haltaman, 43 Texas, 317; Wise v. Wynn, 59 Miss., 588; Railway v. Heidenheimer, 82 Texas, 195; Railway v. Jones, 82 Texas, 156; Hunter v. Lanius, 82 Texas, 677; Stark. on Ev., 62, 63; Phil. on Ev., sec. 249; 1 Greenl. on Ev., sec. 131, 106; Best on Ev., 498; Abbott's Trial Ev., 87.

*W. S. Simpkins* and *Templeton & Patton,* for defendants in error.—1. The charge of the court should be applicable to the case made by the evidence. Railway v. Platzer, 73 Texas, 124; Wooters v. Kaufman & Runge, 73 Texas, 395; Supp. to Sayles' Stats., 306.

2. The charge should not submit issues proven by the uncontradicted evidence. Railway v. Stewart, 57 Texas, 166; Wintz v. Morrison, 17 Texas, 387; Teal v. Terrell, 58 Texas, 261; Railway v. Pearce, 75 Texas, 281; Hunnicutt v. The State, 75 Texas, 233–242; Irvin v. Bevil, 80 Texas, 332.

3. It is proper to refuse special charge embracing several subdivisions when they are all offered together as a single charge, when some of the subdivisions are erroneous. McFaddin v. Schill, 84 Texas, 77; 59 Texas, 222; Railway v. Ewing, 1 Texas Civ. App., 531, and Id., 649.

4. The court properly refused to instruct the jury that they might consider the fact that the William Wallace under whom appellees claim was a single man, etc. Lee v. Yandell, 69 Texas, 34; Railway v. Shearer, 1 Texas Civ. App., 343.

5. The court properly refused to charge on the burden of proof, as requested by appellant. Blum v. Strong, 71 Texas, 322.

6. No errors not distinctly assigned in the application should be considered. Railway v. Wilson, 85 Texas, 507.

7. Declarations of a deceased member of a family are admissible to prove pedigree, and in the case at bar the relationship of W. C. Wallace, the uncle of William Wallace, to said William Wallace's family was proven sufficiently to admit his declarations as to the death and extinction of the maternal as well as of the paternal relatives of said deceased soldier. 18 Am. and Eng. Encyc. of Law, pp. 259, 260, and notes therein and authorities there cited; Abbott's Trial Ev., pp. 91, 92; Wood's Prac. Ev., pp, 275, 276; De Leon v. McMurray, 23 S. W. Rep., 1038, 1039; Brown v. Lazarus, 25 S. W. Rep., 71, 72.

8. The place and manner of death may, when proven for the purpose of identity, be established by family history and by declarations of deceased members of the family. Howard v. Russell, 75 Texas, 171; Boone v. Miller, 73 Texas, 557; Fowler v. Simpson, 79 Texas, 611; Abbott's Trial Ev., pp. 90, 91, sec. 35; 1 Whart. Civ. Ev., sec. 208; 5 Am. and Eng. Encyc. of Law, 362.

9. Appellant's contention that appellee should have been required to show the extinction of the maternal kindred of William Wallace is not presented by any proper assignment or propositions, as required by Rule 30 of the Court of Civil Appeals. See said rule. 1 Sayles' Early Laws, art. 124; 2 Id., art. 781; Pasch. Dig., art. 3419; Prendergast v. Anthony, 11 Texas, 165.

BROWN, ASSOCIATE JUSTICE.—One William Wallace was first sergeant in the company of Captain P. S. Wyatt, in the army of the Republic of Texas, and fell at the massacre of Goliad on the 27th day of March, 1836. Two bounty warrants for land were issued to the heirs of said William Wallace, one for 1920 acres, and the other for 640 acres of land. Two headright certificates were also issued to said heirs, the first for one-third of a league, and the second for two-thirds of a league and labor, the latter being an augmentation certificate.

Two sets of heirs claim the lands in controversy, which were located and patented by virtue of the last named certificate. One set, the plaintiffs below, the defendants in error in this court, claim that William Wallace, who fell at Goliad, and in whose right the certificate was issued, was a single man, and came from Crawford County, Georgia; while the defendants below, plaintiffs in error in this court, claim that said William Wallace was a married man, and that he came from Rock-

bridge County, Virginia. Under the law the heirs of a single man were entitled to a headright certificate for one-third of a league, and those of a man the head of a family were entitled to a certificate for a league and labor of land. Act February 9, 1850; Gen. Laws 1849, p. 153.

The plaintiffs sued as the heirs of the Georgia Wallace, and the defendants claimed the land under the heirs of the Virginia Wallace. The questions involved are, was the Wallace who fell at Goliad the man who is claimed to have come from Georgia, and are the plaintiffs his heirs?

The District Court gave judgment for the plaintiffs, which was affirmed by the Court of Civil Appeals, which found, as conclusions of fact, that the Wallace who fell at Goliad was a single man, and that plaintiffs are his heirs.

In order for the plaintiffs to recover in this case, it was necessary for them to prove that the William Wallace under whom they claimed was the person who fell at the massacre of Goliad, and in whose right the certificate was issued by virtue of which the land was located, and that they were his heirs. Under the facts presented in this case, it must have been shown that the Wallace under whom plaintiffs claim, if he were the deceased soldier as claimed, left neither wife nor child at the time of his death.

The court charged the jury as follows:

"1. If you find and believe from the evidence that the William Wallace who was a member of Captain P. S. Wyatt's company, and fell with Fannin at Goliad, in March, 1836, was from Crawford County, Georgia, and was a son of Robert Wallace, and nephew of W. C. Wallace, and that the plaintiffs are the descendants of said W. C. Wallace, and the heirs of William Wallace, you will find for the plaintiffs all the land in controversy, unless you find for the defendants against the plaintiff W. C. Wallace, under the fourth subdivision of this charge, otherwise you will find for the defendants.

"2. If you find and believe from the evidence that the William Wallace who was a member of Captain P. S. Wyatt's company, and fell with Fannin at Goliad in March, 1836, was from Rockbridge County, Virginia, you will find for the defendants.

"3. In order for plaintiffs to be the heirs of William Wallace, William Wallace must have been the nephew of W. C. Wallace, of Crawford County, Georgia, and died, leaving neither father nor mother, grandfather nor grandmother, living.

"4. If you find and believe from the evidence that defendants had peaceable and adverse possession of the premises in controversy, using same and paying taxes thereon, and claiming the same under deeds duly registered for five years next before the 23rd day of September, 1890,

you will find for the defendants, Byers Bros., against W. C. Wallace, one-third of 1271 acres of the land in controversy.

"5. Adverse possession, as hereinbefore used, is an actual and peaceable appropriation of the land, commenced and continued under a claim of right, inconsistent with and hostile to the claim of another.

"6. You are the sole judges of the weight of the testimony and the credibility of the witnesses, but you must receive the law of the case from the charge of the court."

The defendant's asked the court to charge the jury as follows, which charge was refused:

"The plaintiffs claim that they are descendants of one William C. Wallace, and that William C. Wallace had a nephew by the name of William Wallace, who came from Crawford County, Georgia, to Texas in 1835. In order for the plaintiffs to be the heirs of the William Wallace who is claimed to have immigrated to Texas, it is necessary for you to believe from the evidence that the said William Wallace left surviving him neither wife nor child, father nor mother, grandfather nor grandmother, and unless you so believe from the evidence, you will find for the defendants without any further investigation."

By the third charge given, the court assumed that William Wallace, under whom plaintiffs claimed, was a single man, and withdrew that issue from the jury. It was a material fact to be proved affirmatively by the plaintiffs, by which we do not mean positively, but just like any other material fact; and it was not established by the absence of evidence to the contrary.

A court has the right to assume the existence of a material fact *only* when the evidence is uncontradicted and of that conclusive character that a jury could not find against it. Railway v. Cornell, 84 Texas, 541. Moreover, this certificate could not have been granted to any but a head of a family, and that upon very strict proof. The courts will presume that the officers did their duty, that the proof was made and is true, until it be proved to the contrary. McNeil v. O'Connor, 79 Texas, 227.

The only witness who testified to any fact or circumstance bearing upon that issue was William Wallace, one of the plaintiffs, who by his own statements must have been quite young when he knew William Wallace of whom he speaks; he was an interested party, and in the course of his evidence he said, "I am not prepared to say William Wallace was not a married man." He denied having stated in a previous deposition that he never knew William Wallace, but the deposition was read, in which it appears that he testified, "not having ever seen my cousin William nor his handwriting," etc.; showing a clear contradiction upon this point, unexplained so far as this record shows. From this condition of the testimony it is clear that the evidence of

this witness was not of that character which a jury could not disregard, although not directly contradicted upon the given point.

It is sometimes the case that a witness will testify to facts which in their nature or the lapse of time or other causes, can not be contradicted, and the only protection that the opposite party has is in a cross-examination by which to show self-contradiction, inconsistencies, or other evidences of a want of veracity or correctness of memory, and in all such cases the jury must pass upon the credibility of the witness.

The court erred in refusing the second charge requested by the defendants.

The charge given by the court did not inform the jury upon which party rested the burden of proof, or that plaintiffs were required to establish their right by a preponderance of the evidence. The defendants asked the court to give the following charge, which was refused:

"The plaintiffs must recover, if at all, upon the strength of their own title, and must establish their case by a preponderance of the evidence, and should you be unable to decide from the evidence what Wallace was a member of Captain P. S. Wyatt's company and perished at Goliad, you will find for the defendants."

It is the law of this character of cases, that the plaintiff must recover upon the strength of his own title and not upon the weakness of the defendant's title; that is, the plaintiffs must have shown a right in themselves or fail, notwithstanding it did not appear that the defendants had any right whatever. The case for plaintiffs must be a prima facie case, that is, one upon which they could recover if no evidence was offered to the contrary; and when the defendants offered evidence tending to disprove plaintiffs' case, then it became a question of the preponderance of the evidence, which must be on plaintiffs' side, or the jury must find for the defendants.

In this case there was no doubt that *a* William Wallace fell at Goliad, and the certificate was issued in his right. The question was, whether it was the *Georgia* William or the *Virginia* William. If the plaintiffs showed a state of facts which if not contradicted would entitle them to recover, then by the proof offered by defendants tending to show that the deceased soldier was from Virginia, it became a question as to whether or not the evidence preponderated in favor of the plaintiffs. If it did not the verdict should have been for the defendants. Clark v. Hills, 67 Texas, 141. In the case last cited the material question was the location of a certain line, and the court instructed the jury, in effect, that plaintiff must establish his case by a preponderance of the evidence, under which charge the jury returned the following verdict: "Under the instructions in the charge of the court to the jury that the burden of proof in this case is upon the plaintiff, and not being able to agree upon the location upon the ground, or the lines of the

Ponce grant as defined in the original field notes, we agree upon a verdict for the defendants."

In that case this court, in commenting upon the verdict, said: "If it appears that the preponderance of the proof is not in favor of the party having the onus the verdict should be against him. If the testimony is evenly balanced and he has failed to establish the issue, but has left it in doubt whether he has sustained it or not, that doubt must inure to the benefit of his adversary."

In this case, more than fifty years had elapsed since the facts transpired upon which the rights of these parties depend, and it is often impossible to bring direct proof of them; uncertain circumstances must be resorted to, and it is possible that a jury might be left in a condition of mind that they could not say that there was a greater probability of truth in favor of one side than the other. In such condition, the man unlearned in the law might well be expected to determine the contest according to some other influence brought to bear upon him. Hence it is important that the jury should in a proper case be informed of the rule of law by which they must solve that difficulty. This was a case in which such a charge would have been appropriate, and in which it was necessary to charge as to the preponderance of the evidence.

The court erred in refusing the fourth charge requested by the defendants.

In view of another trial, we will examine some of the objections made to the ruling of the trial court in admitting and excluding evidence.

Over the objections of the defendants, the court admitted in evidence the contents of a letter written by Samuel Wallace to his sister Rebecca, to the effect that he had heard reports that William Wallace, the one claimed to be from Virginia, was to be married to two different persons. This was strictly hearsay and irrelevant testimony, and should have been excluded. We are not able to say that it did not or might not have influenced the jury. When the evidence consists of circumstances and declarations made long since, there being a sharp conflict, as in this case, it is most important that irrelevant evidence should not be permitted to go to the jury. The object of the law in excluding such testimony is to prevent the jury from being influenced thereby. A jury can not tell whether evidence is irrelevant or not, and may attach importance to that which a lawyer or a judge would disregard.

The court also admitted, over objections of defendants, the declarations of William Wallace, through whom the plaintiffs claim title, to the effect that he had a nephew in Texas named William Wallace, who was killed at Goliad in the Fannin massacre. The evidence shows, that if the declarations were true the declarant was the only heir of the party to whom the declarations related. The declaration must have

been made after the supposed death of the nephew, and goes directly to establish the title of the declarant as the sole heir of the nephew. It was a self-serving declaration, made in the interest of the declarant, and should have been excluded. 1 Whart. on Ev., sec. 207; Plant v. Taylor, 7 H. & N., 237; Morrill v. Foster, 33 N. H., 370.

The plaintiffs were permitted to prove by William Wallace, one of the plaintiffs, over defendants' objection, that according to his family history William Wallace, the father of witness, under whom plaintiffs claim title, had a nephew named William Wallace, who went to Texas in the spring of 1835, for the purpose of enlisting in the Mexican war, and was killed in 1836, at what was known as Fannin's massacre.

The defendants offered to prove by the depositions of Joseph Wallace, that Samuel Wallace, a cousin of the William Wallace who is claimed to have come from Virginia, wrote a letter from Goliad a few days before the massacre, in which letter it was stated that "William Wallace, the cousin of the writer, was there, and was a member of a company from Huntsville, Alabama." The writer was in Texas, and was killed at the same massacre. This was objected to by plaintiffs because it was hearsay, and it was by the court excluded.

The evidence admitted and that excluded was equally hearsay, and unless there is a difference as to the subject matter of the declarations in the letter and that shown by the family history which might distinguish them, they were equally admissible or inadmissible. Family history is nothing but the declaration of different members of a family repeated by so many persons and for such a time as to become common repute in the family. Upon the same subjects the family history and the declarations of a deceased member of a family are equally admissible; the weight to be given to each depends upon the circumstances, and is a question for the jury, not a question of admissibility. In this case the family history was to the effect that one William Wallace, from Georgia, started to Texas to enlist in the army, and was killed at the Fannin massacre. In the case of the letter which was rejected, the subject was the presence in Texas, and his actual membership in a company of the army, of another man of the same name, and the letter, taken with other facts, would tend to prove that this William Wallace was killed at that time and place. The family history must have consisted of declarations made by different members of the family repeating what had been learned from others as to the death of that William Wallace, while in the letter the writer stated what he saw and knew at the time, and from which, with other facts, the death, its place and manner, might be inferred. It is certainly no objection to declarations when admissible that they are the statements of what the declarant knows, rather than what he heard. The letter was at least admissible equally with the family history. Should both have been admitted or excluded, is the question for us to determine. It is too well settled

that hearsay evidence, such as is contained in the declarations proved and those excluded, are admissible to prove pedigree, to admit of discussion or to require authority. The question is, were the statements as to independent facts, such as being a member of the army, presence in Texas, or the time and place of death, admissible under the rule? It is often stated that declarations of deceased members of a family are not admissible to prove the time nor place of birth, residence, or death. But this rule has been applied in the main to cases in which the poor-laws were being administered, and a right was being asserted based upon the residence or birth at a given place. Where the time or place of residence or death is introduced for the purpose of identifying the person in question as a member of a particular family, it is admissible as being so closely related to, if not in fact part of, pedigree, that the same rules of law are applicable. Mr. Phillips, in his work on Evidence, volume 1, p. 207 (fifth American edition) states the rule so tersely that we copy it as the best statement of the proposition that we have been able to find. He says: "Locality may, however, be so involved in pedigree as to fall within the general rule and render hearsay evidence admissible on the subject; as where the object is to identify certain persons connected with a particular place as belonging to a family." This rule is well supported by many authorities both English and American, and as we believe by sound principles of law. We cite the following authorities as applicable and in support of this rule: Hubback Successions, 332; Shields v. Boucher, 1 De Gex & S., p. 40; Winder v. Little, 1 Yeates (Pa.), 152; Bishop v. Nesbitt, 2 M. & R., 554; Wise v. Wynn, 59 Miss., 381; Mullery v. Hamilton, 71 Ga., 720; Cuddy v. Brown, 78 Ill., 415; Morrell v. Foster, 33 Conn., 379; Ins. Co. v. Rosengale, 77 Pa. St., 507; McNeil v. O'Connor, 79 Texas, 227.

An elaborate and able discussion of the question will be found in Shields v. Boucher cited above. In Bishop v. Nesbitt, Rolfe, B., draws the distinction very clearly. In the last case the question was as to the admissibility of a declaration by a deceased party when he left home that he was going to a certain place to visit relatives who lived there; it was objected that place could not be proved by such declarations, and Rolfe, B., said: "The declaration is not evidence of the fact that the father of witness did go to Blackburn, or that any one of the name of Nabb was living there; but it is evidence of a tradition in the family that they had relations living at Blackburn; and in the event of its being shown by other evidence that there were persons by the name of Nabb living at Blackburn, this declaration may be referred to, to connect that person with the family now spoken of."

In the case of Wise v. Wynn, 59 Mississippi, 588, the court, after stating the rule asserted by some courts to the contrary, say: "The later and better considered cases, however, repudiate this distinction between declarations as to place and those touching other family mat-

ters, where the inquiry is one strictly of pedigree, and the declarations as to place are not relied on as giving any right by reason of the place, but proof as to place is made merely by way of identification of the person or family."

If this were a suit against the State to establish the right to the certificate (in some cases it was allowed to heirs to sue for that purpose), then the declarations as to the place of death would not be admissible, for the grant was made for the reason that the deceased fell at that time and place, as a principal cause why the heirs should receive the certificate. The certificate, however, has been granted to the heirs of William Wallace, who fell at Goliad in Captain Wyatt's company. The right of the heirs of *the* William Wallace who fell at the time and place named is established, and the question for decision was, which of the claimants, if either, were the heirs or claimed under the heirs of that William Wallace. To connect the deceased soldier with the family of each claimant was the sole object of the evidence.

In McNeil v. O'Connor, 79 Texas, 227, evidence of the declarations of the deceased wife of McNeil was admitted to prove his residence at one time to have been in Jasper County. The evidence was not objected to, but it is commented upon by Judge Stayton in the opinion delivered by him, as if not questioned.

The evidence admitted and that excluded was admissible for the purpose of identifying the deceased as a member of the family; it was so closely connected with the pedigree that it comes within the rule that admits hearsay evidence of this character from the necessity of the case.

We take occasion to say, that we regard the reasoning in Smith v. Shinn, 58 Texas, 1, as being in conflict with the rule here asserted, and in so far as it so conflicts, that case is overruled.

The defendants offered in evidence a certificate of James Gillett, Adjutant-General, filed in the office of the Comptroller of the State, stating, in effect, that Celinda C. Wallace had filed in his office a power of attorney and proof that she was the widow and heir of the William Wallace who was a member of Captain P. S. Wyatt's company, and that bounty and donation certificates had been delivered to David Gage, attorney for the administrator of the estate of said Wallace; also proof that William Woolwine, brother of Celinda Wallace, was duly appointed administrator of the estate of William Wallace, in the county of Rusk. The last was objected to, because there was no power of attorney from the heirs shown, and the admistration was taken out nearly thirteen years after the death of William Wallace, which objections were sustained.

We find no law which authorized the Adjutant-General to give such a certificate as that offered in evidence. It was hearsay, and properly excluded.

It appears from the statement of facts, that Hudson located the lands in controversy; that he received the certificate from Lewis, the attorney of William Woolwine, administrator of the estate of William Wallace, and that William Woolwine was the brother of Celinda C. Wallace, the widow of the William Wallace who came from Virginia. Under this state of facts, the evidence as to the administration was admissible to show an assertion of right or claim to the certificate, as a circumstance to establish the identity of the party in whose right the claim was made.    Hickman v. Gillum, 66 Texas, 314.

In the case last cited the contest was over a tract of land granted to Maria Josefa Delgado.    There were two persons of that name.    The plaintiff in that case claimed under one and the defendant under the other.    The main issue was as to which was the person to whom the grant was in fact made.    Certain papers were in evidence which the trial court did not regard as evidence of title, but was admitted as evidence of assertion of claim of title and the exercise of acts of ownership.    This court said in that case: "Whilst the fact that a party asserted that land belonged to her would be no evidence of title, yet it would be the best possible evidence that she claimed it.    And when, as in this case, the grantee of land has a name which is borne by two persons, the fact that one of them has claimed the land continuously from the date of the grant, and exercised acts of ownership over it for a long series of years, and the other has done nothing of the sort, during the whole of the time, affords strong evidence that the former was the person intended to be named in the grant."    If it be conceded that the administration was void, then it does not render the testimony inadmissible.    No right was claimed under the administration, and whether valid or void it was equally effective to prove the fact that it was procured in the interest of Celinda C. Wallace as a step towards securing the certificate in question, and that the person claiming to be such administrator did in that right assert claim of right to the certificate.    The evidence should have been admitted.

The judgments of the District Court and the Court of Civil Appeals are reversed, and this cause is remanded to the District Court for further proceeding in accordance with this opinion.

*Reversed and remanded.*

Delivered December 21, 1894.

### ON MOTION FOR REHEARING.

*W. S. Simpkins* and *Templeton & Patton*, for motion for rehearing.— Addressing ourselves to the fifth ground of our motion for a rehearing, we earnestly insist that this court is in error in holding that the declarations of William Wallace (the uncle of the deceased soldier), through whom these defendants claim, were self-serving, and should

have been excluded. In the first place, while the declarations were made after the death of the nephew, yet they were made many years before the passage of the Act of February 9, 1850, under which the certificate, by virtue whereof the land in controversy was located, was granted. At the time these declarations were made the property in controversy not only had no existence, but the law authorizing the issuance of the certificate had not yet been enacted. There was no controversy as to either the ownership of this property, or as to who were the heirs of the said William Wallace, whom the declarant said was his nephew, and who had fallen at Goliad. Neither can it be successfully maintained that these declarations were self-serving, for so long as the declarant lived his declarations were not admissible in his favor, or in favor of his heirs, in any case. Now, we ask the question, is it necessary, to render the declarations of a deceased member of the family as to pedigree admissible in evidence, that it should appear that the declarant was disinterested at the time he made the declarations? and is it sufficient to exclude the declarations that it is made to appear, that if they be true the declarant is an heir of the decedent? In this case this court has answered this question in the affirmative. Is this holding supported by the weight of authorities?

In the case of Fowler v. Simpson, 79 Texas, 614, 615, Judge Henry, in delivering the opinion of this court, said: "The defendant Simpson, as appellant, assigns as error a ruling of the court, in permitting John J. Fowler, one of the plaintiffs, to testify to the declarations of his father, James Burton Fowler, 'that he was the surviving brother and only heir of Sam and John Fowler,' made before he had conveyed the land to plaintiffs." It is contended, that the declarations of James Burton Fowler, made at the time he claimed to own the land, were not competent evidence. With regard to the admission of hearsay evidence in cases of pedigree, Mr. Greenleaf says, that the law resorts to it "upon the ground of the interest of declarants in the person from whom the descent is made out, and their consequent interest in knowing the connections of the family. * * * The rule of admission is therefore restricted to the declarations of deceased persons who were related by blood or marriage to the person, and therefore in the succession in question. The evidence was proper."

In the case of Louder v. Schluter, Mrs. Jemison was permitted to testify, over the objection of defendants, that she had heard her grandfather say that Green B. Jemison (the dead soldier) was his son, and that she had heard her mother say that he was her brother. These declarations were held admissible to prove relationship, both of the declarants being dead. 79 Texas, 105. In both of these cases, the purpose of the testimony was to prove that the declarants were related to and were heirs of the deceased soldier. In the case of Boone v. Miller, this court, quoting from Mr. Wharton on Evidence, says:

"Pedigree, from the nature of things, is open to proof by hearsay in respect to all family incidents as to which no living witness can be found. If what has been handed down in families can not in this way be proven, pedigree could not in most cases be proven at all. Nor is such tradition in its best sense open to objections applicable to hearsay. The recognition of such relations forms part of the family atmosphere; the existence of such relationship constitutes the family. What is said by one member of the family to another as to pedigree, may be received to prove such pedigree." 73 Texas, 564.

Mr. Phillips, in his work on Evidence, volume 1, p. 228, fifth American edition, says: "It is not a valid objection to this kind of evidence that the party making this declaration may have stood, or thought he stood, in pari jure with the party tendering the declaration, and therefore might be under a bias. Although the party, if he had been living, might have stood in the very situation of the person who tenders his declaration in evidence, that circumstance is not sufficient to exclude it. The reason of admitting the evidence in these cases appears to be, that since competent knowledge is required to make hearsay receivable in matters of tradition, and a probability also of the declarations having occurred naturally in the course of familiar intercourse, it would almost dry up such source of information to require further an absence of all bias on the subject of the declarations. It has been thought to be some safeguard, sufficient at least to warrant the admissibility of the evidence upon points where no better evidence can commonly be expected, that the declarant could derive no advantage from his own statements, and that there was at the time no existing cause to induce him to depart from the truth. Thus, the declarations of a person entitled in remainder, stating the extinction of the issue of the persons standing in the line of entail between her and the then possessor of the estate, were held admissible for the plaintiff claiming through her. And in a peerage case before the House of Lords, a widow was allowed to prove the declarations of her deceased husband in support of her son's title; though the husband, if living, would have had the right which the declaration tended to establish."

Mr. Wood, in his work on Practice Evidence, on page 276, says: "It is no objection that the person who made the declaration stood in pari casu with the person tendering it in evidence. In a claim of peerage, a widow was admitted to prove the declarations of her deceased husband in support of her son's title; though the husband, if living, would have had the right which the declaration went to establish. So declarations are admissible, though they tend to show the declarant's own title at the time, provided there was no lis mota." This author cites divers authorities in support of this doctrine, and but one authority against it, and that one is Plant v. Taylor, cited by this court in the case at bar in support of its decision. Neither Mr. Green-

leaf, in his work on Evidence, nor Mr. Abbott in his Trial Evidence, makes any such exception to this rule admitting hearsay testimony to prove pedigree as is made by this court in the case at bar.   1 Greenl. on Ev., secs. 103, 104, 134; Abbott's Trial Ev., p. 95, sec. 40.   To the same effect is 1 Wharton, secs. 213, 214.   We regret that we have not had the opportunity of examining the two cases cited by this court in support of its position on this point, but in view of the authorities above cited, we insist that the decision of this court in this case upon the point here presented is not supported by the weight of authority, and that it is in direct conflict with the former decisions of this court cited above.   Why should these declarations have been excluded?   No controversy as to the heirship of said William Wallace had arisen. Elliott v. Piersoll, 1 Pet. (U. S.), 328.   Nor could the declarations ever be admitted in evidence in behalf of the defendant.   If the extreme doctrine announced in this decision be adhered to, we submit that it will practically close the door to this class of testimony, for it will rarely be the case that the declarant will be wholly disinterested. We respectfully but earnestly insist that this decision of the court upon this point is wrong, and that it should be reversed.

BROWN, ASSOCIATE JUSTICE.—Counsel for the defendants in error earnestly insist that the decision of this court is erroneous upon several points, and especially as to the admissibility of the declarations of William Wallace, under whom the defendants in error claim title to the land.

The statement of the evidence admitted upon which the question is raised is as follows:

"The eighth bill of exceptions shows that 'son William' was allowed in another set of depositions to say that his father had frequently told him that he had a nephew who went to Texas, and was killed in 1836, at what was known as the Fannin massacre."

It does not appear at what time the declarations were made, and counsel claim that it does not appear that they were self-serving, because made before the granting of the certificate under which the land is claimed.   From the declarations, it appears that William Wallace, claimed to be the nephew of the declarant, was then dead, and if the declarations under other evidence in the record be true, the declarant would be sole heir of the deceased and entitled to his estate, whatever it might be.   Besides, the deceased soldier's heirs were entitled to land under a law in force at his death.

It is insisted that this court has decided contrary to the weight of authority upon this question, and in conflict with the cases of Boone v. Miller, 73 Texas, 557; Louder v. Schluter, 78 Texas, 103, and Simpson v. Fowler, 79 Texas, 614.   The question is not remotely hinted at in the first two cases.   In the last it is perhaps true that this question

was before the court, but it is so indefinitely stated that it is not certain that the court decided upon the very issue. The opinion was delivered by Judge Henry, in which he said: "The defendant Simpson, as appellant, assigns as error a ruling of the court in permitting John F. Fowler, one of the plaintiffs, to testify to the declarations of his father, James Burton Fowler, that he was the surviving brother and only heir of Sam and John Fowler, made before he conveyed the land to plaintiffs. It is contended that the declarations of James Burton Fowler made at the time that he claimed to own the lands were not competent evidence. James Burton Fowler was dead when the testimony was given. With regard to the admission of hearsay evidence in case of pedigree, Mr. Greenleaf says, that the law resorts to it 'upon the ground of interest of the declarant in the person from whom the descent is made out, and their consequent interest in knowing the connections of the family. The rule of admission is therefore restricted to the declarations of deceased persons who were related by blood or marriage to the person, and therefore interested in succession in question.' The evidence was properly admitted." This is all that there is in the opinion touching the question.

What is decided by this case? The assignment of error was broad enough to embrace the objection that the declaration was made by the party in his own interest, but the proposition deduced from it by the judge in this language, "It is contended that the declarations of James Burton Fowler, made at the time that he claimed to own the land, were not competent evidence; James Burton Fowler was dead when the evidence was given," seems to narrow it to two questions that might be presented, that is, that the testimony was hearsay, and that the declarations were made by him while in possession of the land, and not being in disparagement of his title, were not admissible. Looking to the quotation from Mr. Greenleaf, which is the decision of the question, we can arrive at what the court understood the question to be by ascertaining what was decided. The text of Mr. Greenleaf, as quoted, rests upon the proposition that such declarations are admitted upon the ground of interest in the person from whom the descent is made out, and that being so interested, they would likewise be interested in knowing the family connection or pedigree. He then states the rule to be, that only declarations of those related to the person by blood or marriage, and therefore, that is, because of their relationship, interested in the succession or order of succeeding to the rights of the ancestor. Nothing is decided in this case which bears the remotest analogy to the question presented here. The quotation from Mr. Greenleaf was apt upon the question of whether the evidence as hearsay was admissible, but upon the question that the declarations were self-serving the text quoted was without any relevancy.

The summary manner in which the court disposed of the question was proper, if the proposition was that the declarations were hearsay and not admissible, and the court might well dismiss such a question with a quotation of that kind; but if it had been the question now before the court, Judge Henry and the court of which he was a member would not have misapplied the text as quoted nor dismissed the question without careful investigation. We conclude that the case does not decide the question. If it is to be so understood, however, we would be constrained by authority and reason to overrule it. In addition to the authorities cited in the original opinion, we add the following as being in point and in support of our conclusion: 1 Phil. on Ev., 5 Am. ed., pp. 202, 203, 228; Best on Ev., p. 477; Whitlock v. Baker, 13 Ves., Jr., 514; Berkley Peerage case, 4 Camp., 415; Rex v. Cotton, 3 Camp., 446; Chapman v. Chapman, 2 Conn., 347; Waldron v. Tuttle, 4 N. H., 371.

All of the authorities cited above sustain the text of Mr. Phillips, p. 228, which is as follows: "It has been thought to be some safeguard sufficient to warrant the admissibility of the evidence, upon points where no better evidence can commonly be expected, that the declarant could derive no advantage from his own statements, and that there was at the time no exciting cause to induce him to depart from the truth." This is in substance stated upon pages 202 and 203 of the same author. In matters of public interest, such as rights of common and the like, declarations are admitted from disinterested persons only. Greenl. on Ev., sec. 145. And in matters of boundary between private individuals declarations of deceased persons are admitted if not interested when the declarations were made, or the declarations were not such as would directly benefit the declarant. Stroud v. Springfield, 28 Texas, 666.

In pedigree, matters of public interest, and ancient boundaries, the law excludes declarations of all persons made post litem motam, because it presumes that even the interest one may feel in the success of his friend might bias the statement and deprive it of its value as a statement impartially made.

If the proposition contended for in this case be established, then we have this strange contradiction in the common law, that if William Wallace had been upon the stand under the common law rules he could not have testified, although under the sanction of an oath and subject to cross-examination; yet if he declared the same matter not under oath, not in the presence of the opposite party, and when he could not be cross-examined, such statements would be admissible to sustain his right asserted by his ex parte declarations.

It is not contended that the rule as to hearsay is changed by our statute rendering interested persons competent to testify, and we apprehend that it would not be so contended.

. We have carefully examined the authorities referred to by counsel and all those cited by Mr. Phillips, except Monkton v. the Attorney-General, which we can not find in our library, and the result is, that the greater number of them do not remotely sustain the proposition. They are in the main nisi prius trials, reported in such manner as to be very unsatisfactory and unreliable as authority.

Tilman v. Tarver, 21 Common Law Reports, 719, is a case in which the declarations of a woman show the extinction of issue of persons standing in the line of entail between her and the person then in possession of the property. But there was not in that case any present interest, for it was a remote probability that she might come to the enjoyment of the property.

In Jenkins v. Davis, 59 Common Law Reports, 313, an estate had been granted with a number of limitations, and, upon reaching a certain person, to be held by him for life, with remainder to the right heirs of the grantor. The life tenant being in possession, joined with a woman conveying the land to a third person, stating she was the right heir of the original grantor, and the court admitted the deed as a declaration of the two. This was sustained, upon the ground that the declarations of the life tenant, who was also a relative, were admissible, and also because the interest of the woman did not render her declarations inadmissible. These cases are the nearest in point and in support of the position of defendants in error of any that we have found, but they are not so clearly cases in which the evidence was not admissible as the case at bar. In the case first cited the interest was very remote, while in the latter case no interest was acquired by the declaration. It was, as the court said, an act which the party had the right to perform, and in which all interest was parted with. In the case before the court the declarations were made obviously in the interest of the declarant; he was by the declarations, if admitted, established to be the sole heir of the deceased. It was a statement made contrary to the rule that it must be such as was not under the influence of any interest that would be active in inducing him to depart from the truth. It was not a remote interest, but one that was present. It was not an interest parted with, but one to be acquired.

We find no error in our former opinion, and the motion for a rehearing is overruled.

*Application overruled.*

Delivered February 11, 1895.