## STRICKLAND et al. v. HUMBLE OIL & REFINING CO. et al.

### POOL et al. v. SAME.

#### No. 10562.

Circuit Court of Appeals, Fifth Circuit.

Jan. 17, 1944.

Rehearing Denied March 4, 1944.
Further Rehearing Denied May 1, 1944.

Walter F. Brown, of Houston, Texas, and Robert B. Blackburn and E. L. Fowler, both of Atlanta, Ga., for appellants.

J. L. Pitts, of Conroe, Texas, and Edgar E. Townes, John C. Townes, and P. F. Graves, all of Houston, Tex., for appellees.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The appellants, several hundred in number, are the plaintiffs and intervenors in a suit in the District Court to recover a tract of land in the Southern District of Texas, and compensation for oil taken therefrom. They sue as the collateral relatives and devisees of a Wilson Strickland who was born in Georgia in 1783 the son of Jacob and Priscilla Strickland, and who married Polly Conally in that State in 1809, she dying there in 1840, and who himself died childless but testate and was buried in Georgia in 1841. The will, probated in Georgia that year, gives his property not specially willed to his brothers and sisters, and the children of any who may be deceased, per stirpes. No land in Texas is mentioned in the will.

The land in controversy was granted by the State of Texas to a Wilson Strickland on a certificate issued to him by the Commissioners of the Land Office on March 16, 1838, which stated he had appeared before the Commissioners and proved that he had arrived in the country in 1829 and was a single man and entitled to one-third of a league of land on payment of certain fees. The survey appears to have been made and reported Aug. 15, 1838, and some of the fees paid by Burch as agent of Strickland Aug. 31, 1839, but the patent is dated July 3, 1847.

The appellees, defendants below, denied the title of appellants, but admitted the grant to Wilson Strickland, and asserted title thereunder because of a sale by Strickland of the land before the patent issued to one Vince, and because in 1847 Vince recovered the land from Strickland in a

suit against Strickland as an absent defendant, under Texas procedure; with subsequent conveyances from the heirs of Vince. They also claimed title under a deed from W. D. Strickland of North Carolina and others as the heirs of the patentee; and title by limitation; and lastly that during the pendency of the present litigation the title to the land had been tried out in the State courts of Texas under proceedings which were averred to be effectual to make these appellants parties and to bind them, resulting in a final judgment rendered that the Wilson Strickland through whom appellants claim was not the patentee.

The present case went to trial before a jury. It soon appeared that the evidence of appellants' relationship to their Wilson Strickland would be tedious, and that the contest as to whether Vince's judgment against the patentee in 1847 was valid would be sharp; as also that as to the effect of the recent State court litigation. Under authority of Rule of Civil Procedure 49, 28 U.S.C.A. following section 723c, the District Judge separated out for trial first the single fact question as to whether Wilson Strickland, the son of Jacob and Priscilla Strickland, was the patentee of the land. The jury answered that question, No. Judgment was thereupon entered for the defendants. This appeal asserts numerous errors in the trial of that issue, in admitting and rejecting evidence, and in the court's charge.

■ Appellants contend that identity of name shows presumptively identity of person, and that appellees had the burden of showing that the patentee was not their Wilson Strickland. It is true that identity of name is some proof of identity of person. Chamblee v. Tarbox, 27 Tex. 139, 84 Am.Dec. 614; 22 C. J., Evidence, § 32; 31 C.J.S., Evidence, § 127; but its weight and effect varies much with the circumstances. There is evidence in this case of several Wilson Stricklands in life at about the critical time, four of them in Georgia. They were clearly different persons, and yet all had the patentee's identical name. The identity of name does not prove the patentee to have been appellants' Wilson Strickland any more than each of the others. Other identification is necessary, and the burden of showing it is not shifted from the plaintiffs.

No conclusive identification is proven. The patentee came to Texas in 1829, and must have lived there through 1838 to be entitled to his land. He got the allowance of a single man, although he would, if married, have been entitled to twice as much. He was illiterate, signing by mark. He was gone from Texas in 1847, when Vince, who had helped him get the land, sued him as absent and got judgment for the land. The evidence does not show where the patentee went or what became of him. Appellants' Wilson Strickland in 1805 was indicted for killing a negro and reputedly went west, probably to Tennessee. He stood trial in 1808 and was acquitted. He married in 1809. His name appears on the public records in Georgia, especially the deed records, almost every year until his death in 1841. He signed his will by mark, and also some of his deeds, but some deeds on the record appear to be signed with his name. No record or definite family tradition puts him out of Georgia or in Texas between 1829 and 1838. His will disposes of many slaves and several specific pieces of land in Georgia. It mentions no property in Texas. His wife lived till 1840, and he had not been a single man since 1809. On these plainly proven facts there is really little probability that he was the patentee. The family repute that he at one time went west seems to center about the killing of the negro, but that was over in 1808, as the court records show. No trip west at any pertinent date is established.

■ One witness offered to testify that her Uncle Henry Strickland, a nephew of Wilson Strickland, was said in the family to have started twice to Texas to take up some cheap land because his Uncle Wilson had done so. She knew her Uncle Henry before his death and he had never said anything about it to her. No date was fixed. She finally said Texas was first mentioned since this litigation arose by an aunt who is still living though in bad health. The judge ruled out the evidence of repute that Wilson Strickland had taken up cheap land in Texas as hearsay. But the rejected evidence was brought out by appellees on cross-examination. If there was error in rejecting it, it was cured. But we think there was no error, because unless the cheap land was taken up in Texas, and about 1836, it was irrelevant; and it did not amount to a family tradition since Texas was brought into it only after this controversy arose and by a living person interested in the controversy. Similar rulings were made as to other witnesses. We think they were in line with the lead-

ing cases in Texas dealing with such evidence. Byers v. Wallace, 87 Tex. 503, 28 S.W. 1056, 29 S.W. 760; Sargent v. Lawrence, 16 Tex.Civ.App. 540, 40 S.W. 1075; Lewis v. Bergess, 22 Tex.Civ.App. 252, 54 S.W. 609.

■■ Strong exception is taken to the admission of evidence of Mrs. Barnes, testifying in behalf of appellees, as to what her father, who died in 1915, but lived with her previously for many years not very far from the land in controversy, had repeatedly told her about his coming to Texas. It was in brief that he was of a family of North Carolina Stricklands, and his uncle Wilson Strickland had gone to Texas and taken up some land and got someone to write back for her father, then about ten years old, (about 1843), to come out and live with him. The boy was entrusted to neighbors who were going to Texas, and reached his uncle and lived with him on this very land with a man named Vince, who was unpleasant and unkind to him. His Uncle Wilson disappeared one day, and Vince said he had gone back to North Carolina, and that he, Vince, had bought the land, and he ran the boy off. He never saw his uncle again. The witness said her father never laid any claim to the land, never even went to the records to see how the title stood. None of the family prior to his death, or till in recent years, paid any attention to the land. Mrs. Barnes had been a claimant in the State court litigation, where Vince's title was apparently sustained. But if she was still interested, she was nevertheless a competent witness. Her father's declaration that his Uncle Wilson was in possession of the land would not have been admissible to prove that fact, if that had been the issue. Byers v. Wallace, Sargent v. Lawrence, supra; Brewster v. Villa, 5 Cir., 90 F.2d 853. But that was not the issue, the only issue being, Who was the man to whom this land was patented—was he Wilson Strickland from Georgia, or North Carolina, or elsewhere? On that issue, it was competent to prove that the witness' father, long before this controversy arose, claimed kin with him, said he was his uncle, and that he had come to Texas to join his uncle. This is a pure matter of kinship, identifying a particular person as a member of a family by declarations of a deceased member of the family, which is a well established method of proving such kinship. 31 C.J.S., Evidence, §§ 226, 230, 231. While this evidence was vivid and, if believed, forceful, it was admissible though hearsay for the purpose for which it was offered.

■ One of the identifying circumstances in issue was illiteracy. To explain the apparent signing by the Georgia Wilson Strickland of some of his deeds, evidence was offered by a Georgia attorney of age and experience that illiterates may in Georgia sign either by mark or may call on a person present to sign the illiterate's name, thereby adopting the signature. The judge refused the evidence, holding that he would judicially recognize the Georgia law. Exception is taken to this ruling. The law of a foreign State or country may be proved as a fact by a witness familiar with it. But in a court of the United States no State of the Union is a foreign State. The judge judicially notices the law of them all, and may inform himself in such manner as he chooses. Owings v. Hull, 9 Pet. 607, 625, 9 L.Ed. 246; Lamar v. Micou, 114 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94; Jones v. United States, 137 U.S. 202, 11 S.Ct. 80, 34 L.Ed. 691. It is not proper to prove such a matter to the jury by witnesses. United States v. Turner, 11 How. 663, 13 L.Ed. 857. It does not appear that any request was made to the court to charge the jury as to what the Georgia law was, nor what if any instruction was given thereon.

■ A certificate was rejected which showed that Sam Pablo Houston was admitted to Texas citizenship as a bachelor without family. The objection was for irrelevancy, and that there was no identification of the person referred to. The objection was good. The argument made here is that General Sam Houston was meant, and that he in fact had a wife. We cannot so assume.

■ We have considered the charge of the court, and do not think it unduly stresses the burden of proof as being upon appellants. Its reference to the ring of a true coin as compared to the dull thud of a false one, in charging upon the claims of descent and relationship, might better have been omitted, but it applied equally to the evidence of each side, and did not detract from the repeated charge that the jury were the judges of the credibility of all the witnesses and of the truth of the case. We have examined the other assigned errors and find nothing requiring a reversal.

Judgment affirmed.

On Motion for Rehearing.

· Rehearing denied; HOLMES, C. J., dissenting.

HOLMES, Circuit Judge (dissenting).

I think the petition for rehearing should be granted, the judgment reversed, and the cause remanded for a new trial, because of the admission of hearsay testimony and self-serving declarations that cannot be said to have been without prejudice.