J. S. MᴄNᴇɪʟ ᴇᴛ ᴀʟ. ᴠ. D. M. ᴀɴᴅ T. M. O'Cᴏɴɴᴏʀ.

No. 2927.

1. **Identity of Name.**—Identity of name is ordinarily deemed sufficient evidence of identity of person, but the strength of the presumption arising from such evidence depends largely upon circumstances, which may make the evidence of identity very strong, or may defeat entirely the presumption that in a given case would arise from mere identity of name.

2. **Same.**—See facts held sufficient to rebut the presumption of identity of person from the identity in name.

3. **Issuance of Colonial Grant Relevant.**—It was competent in an action by heirs of Daniel McNeil to show that the ancestor received a headright grant in 1824 as a colonist in Austin's colony. The land in controversy was located under headright certificate issued in 1838 to Martin Palmer, administrator of·Daniel McNeil, in Jasper County. This McNeil immigrated in 1826.

4. **Circumstantial Evidence.**—The archives in the Land Office showing the proceedings of the board of land commissioners are competent to show to whom and upon what proof headright certificates were granted.

5. **Immaterial Testimony.**—The depositions of the Commissioner of the General Land Office were taken to matters appearing in his office. He gave as an exhibit copies of reports in his office. His testimony contained no material fact other than that in the exhibit. *Held,* in a trial below without a jury that as the testimony complained of could not have affected the result it was no ground for reversal.

Aᴘᴘᴇᴀʟ from Refugio. Tried below before Hon. H. Clay Pleasants. A statement is given in the opinion.

*A. B. Peticolas,* for appellants. — 1. The court erred in admitting in evidence the colonial grant of 1824 to Daniel McNeil upon the question of identity, because it was irrelevant testimony upon that issue, and because no one but the State can object to a grant or patent because it is a grant to one who has already received his quantity of land by another grant. Burleson v. McGehee, 15 Texas, 375; Edwards v. James, 7 Texas, 372; Chamblee v. Tarbox, 27 Texas, 139; Baker v. McFarland, 77 Texas, 294; Styles v. Gray, 10 Texas, 503; Johnson v. Smith, 21 Texas, 722; Ruis v. Chambers, 15 Texas, 590; Todd v. Fisher, 26 Texas, 239; Howard v. Colquhoun, 28 Texas, 134; Hickman v. Gillum, 66 Texas, 318.

2. The evidence of the Commissioner of the General Land Office is not admissible to prove any fact shown by the records of his office or to state any deductions therefrom. Bass v. Mitchell, 22 Texas, 285; Williams v. Davis, 56 Texas, 253; Buford v. Bostick, 58 Texas, 63; 50 Texas, 375.

3. The court erred in his judgment in giving defendants, who are mere trespassers, the benefit as a defense of an outstanding equity in the State, they not having connected themselves with it.

4. The court erred in presuming that there were two different persons named McNeil upon the testimony introduced by the defendants, and in allowing to them the defense of outstanding title upon that proof, which showed no outstanding title in any one.

5. Similarity of name is ordinarily sufficient evidence of the identity of a person in a chain of title. Robertson v. Du Bose, 76 Texas, 1; Chamblee v. Tarbox, 27 Texas, 139; 59 Texas, 524; Baker v. McFarland, 77 Texas, 394; Hickman v. Gillum, 66 Texas, 314.

*Glass, Callender & Proctor,* for appellees.— 1. Although the State only could reclaim a headright grant made by mistake or fraud to a colonist who had already received his headright grant, nevertheless the defendants below had the right to show that the ancestor of the plaintiffs had received and taken possession of his headright grant in 1824, as a fact tending to show that he was not the same man whose administrator applied for and obtained a headright certificate in 1838, in another county, and upon proof that he came to Texas in 1826. Hickman v. Gillum, 66 Texas, 317.

2. Identity of name is taken as sufficient evidence of identity of person only where there are no facts or circumstances tending to a different conclusion. Chamblee v. Tarbox, 27 Texas, 144, 145; Robertson v. Du Bose, 76 Texas, 6; Baker v. McFarland, 77 Texas, 294.

3. The burden was on the plaintiffs to show that their ancestor was the man to whose administrator the headright certificate was issued in Jasper County in the year 1838, and the court did not err in finding that the plaintiffs "had not by a preponderance of evidence shown that their ancestor, Daniel McNeil, was the person to whose heirs the certificate was granted upon which the patent to the land sued for was issued."

4. The court having found that the identity of the plaintiffs' ancestor and the grantee of the Jasper County certificate was not proven, this finding is entitled to the same consideration as the verdict of a jury; and there being evidence in support of the finding it will not be disturbed, even if the Supreme Court might incline to a different finding upon the same evidence. Jordan v. Brophy, 41 Texas, 283; Flanagan v. Oberthier, 50 Texas, 382.

5. Since the adoption of the Revised Statutes the Commissioner of the General Land Office may certify in his own language to facts that appear by the records of his office, and the certificate is competent evidence of the facts. It seems reasonable to hold that he may depose to what he can make evidence by certificate without oath. The decision in Bass v. Mitchell, 22 Texas, 285, was made before the adoption of the Revised Statutes. Rev. Stats., art. 2253.

STAYTON, CHIEF JUSTICE.—The land in controversy was granted by virtue of a first class headright certificate issued to Daniel McNeil by the Board of Land Commissioners for Jasper County in December, 1838. The original certificate was issued upon application of Martin Palmer as administrator.

Appellants, who are shown to be entitled as descendants of one Daniel

McNeil, prosecute this action to recover the land, and the proper determination of the case depends on the question whether the ancestor of the plaintiffs is shown to be the person to whom the certificate was issued by virtue of which the land was granted.

The court below found that this identity was not shown.

The evidence shows beyond controversy that the Daniel McNeil who was the ancestor of plaintiffs was one of Austin's first colonists, and that he applied for and received as such colonist a league of land in that colony in August, 1824.

The application for the colonial grant was made by Daniel McNeil in person. The fact that he was then recognized as an inhabitant of the colony the grant shows, as does other evidence, and to him in person was juridical possession given.

The evidence of a number of persons, formerly slaves belonging to John McNeil, who also lived in Austin's colony, was introduced for the purpose of showing that they knew Daniel McNeil who lived in that colony, and that, having a general acquaintance throughout much of the then inhabited portion of Texas, they knew of no other Daniel McNeil than the person who was the brother of their master.

These witnesses all date their arrival in Texas "ten years before the battle of San Jacinto," and one of them stated that Daniel McNeil came to Texas several years after the witness did.

Another one stated that he did not remember the date of Daniel McNeil's death, but that he did "know that on account of hard feelings and crossness between himself and wife that he left home for East Texas, and died some four or five years after I came to Texas."

Some of these witnesses testify that their master, when he first came to Texas, stopped for a short time in Jasper County and subsequently came to Austin's colony, where he remained.

The only other evidence tending to show that Daniel McNeil ever lived in Jasper County was that of one of his grandsons, who was forty-seven years of age at the time he testified. His statement was: "After he died my grandmother lived and died at my father's house. I have often heard her speak of my grandfather, Daniel McNeil, having lived in Jasper County, Texas; that they first settled on the red lands in Jasper County."

The report of the Board of Land Commissioners for Jasper County, filed in the General Land Office, shows that the Daniel McNeil to whom they issued the land certificate by virtue of which the land in question was granted immigrated to Texas in 1826.

There is no doubt that identity of name is ordinarily deemed sufficient evidence of identity of person, but the strength of the presumption arising from such evidence depends largely upon circumstances, which may make the evidence of identity very strong or may defeat entirely the presump-

tion that in a given case would arise from the mere identity of name. Chamblee v. Tarbox, 27 Texas, 139; Robertson v. Du Bose, 76 Texas, 1.

For the plaintiffs we have evidence that the name of their ancestor was Daniel McNeil, and that he in 1824 resided in Austin's colony with his family, where he received a grant as a colonist. The declaration of Mrs. McNeil would tend to show that at some time prior to the time when he settled in Austin's colony he may have resided in Jasper County, but there is no evidence that after he left the colony he was ever in that county again.

If this was all the evidence, it may be had the finding of the court below been in favor of plaintiffs that it would not here be set aside.

Having received a league of land as a colonist, neither the ancestor nor his descendants were entitled to the land certificate issued in Jasper County in 1838.

That certificate was issued by the land commissioners for that county under the Act of December 14, 1837, before whom it was necessary to prove, among other facts, when the person in whose right a certificate was asked immigrated to the Republic, and that fact was required to be stated in the report of the board required to be filed in the General Land Office. Pasch. Dig., arts. 4129, 4140, 4142.

It was the duty of that board to investigate fully every fact bearing on the right of the applicant to a certificate, and one leading fact bearing on that question was whether the applicant or person on account of whom a certificate was asked had already received the land to which he was entitled on account of immigration and residence.

If the immigrant made application, it was necessary for him to make affidavit "that he had not previously received a title to his quantum of land."

The boards created by subsequent acts to detect fraudulent land certificates were required to re-examine the rights of those who held certificates issued by former boards, and to ascertain whether they had been issued to persons entitled thereto.

Their duties required that again they should make the inquiry whether the person holding a certificate had received his quantum of land before the certificate issued.

It must be presumed that both of these boards discharged their duties faithfully, and if so the inference follows that proof was made that in December, 1838, the Daniel McNeil to whom the certificate was issued had not received his headright league of land, while the evidence conclusively shows that this was not true of the ancestor of plaintiffs.

From the action of these boards it must be further presumed that proof was made before them that the Daniel McNeil to whom the certificate issued immigrated to Texas in 1826, whereas the evidence before us shows conclusively that the ancestor of plaintiffs settled in Texas as early as the year 1824.

The land in question was patented in 1876, and was not located until some time after October, 1873, when a duplicate certificate was obtained and probably located by persons having no right to it whatever.

During the time intervening the original issuance of the certificate and the institution of this suit no claim is shown to have been asserted by plaintiffs, although the inference is that they have been residents of Texas.

Notwithstanding the identity of name, we are of opinion that the evidence justified the holding of the court below that the plaintiffs, on whom rested the burden of proof, had not shown that the land certificate in question was issued to their ancestor.

If the fact be as claimed by plaintiffs it seems to us that evidence might have been brought to establish it.

We think there was no error in the admission of the colonial grant to plaintiffs' ancestor, nor in the admission of the report of the Land Board showing the issuance of the certificate in question, for they each showed facts having a bearing on the question of identity.

The testimony of the Commissioner of the Land Office showed no material fact not shown by the copy of the report which he furnished as an exhibit, and could not have affected the rights of the parties either way; and both parties seem to have consented that all evidence offered might go before the judge and be considered so far as he deemed it proper.

We find no error in the proceedings that led to the judgment, and it will be affirmed.

*Affirmed.*

Delivered January 13, 1891.