C. H. ALLEN ET AL. v. GEORGE BRUCE HALSTED.

Decided May 3, 1905.

1.—Bounty Land Warrant—Identity of Grantee—Evidence—Common Repute.

Where the issue was as to whether a certain deceased person was the grantee named in a bounty land warrant and those who could have testified to his military service from their own knowledge were dead, the fact that he so served could be proved by the general opinion of those where he lived and was known for years up to the time of his death; and in any event the admission of such evidence was not prejudicial error where testimony of the same character was admitted without objection.

2.—Same—Harmless Error.

Where all the testimony tended to show that the person who was claimed to be the grantee in the certificate did serve in the war of the Texas revolution, the admission of the testimony of a witness that he heard his father speak of such person being brave and daring to want to go to war while so young, if error, was harmless, such expression having little bearing on the issue of whether he did go to the war.

3.—Same—Evidence of Identity.

The testimony of a witness that she knew her husband during their married life bought the land located by virtue of the bounty warrant from a certain person, and that by refreshing her memory by referring to the deed she recalled, without aid of the deed, the fact that such purchase was in 1872, was admissible to identify such person as the claimant of the land at that time.

4.—Same—Archives—Proof of Pension.

As tending to show that the party under whom plaintiff claimed as the true grantee in the bounty warrant was the grantee therein, plaintiff could show, by copies of the archives of the Comptroller's office, certified to by the custodian thereof, an application by such party for a pension under the Act of August 13, 1872, with the accompanying proof, including an official certificate which entitled him to pay as a soldier in the Texas revolution.

5.—Same.

For the same purpose a copy of the muster roll of Fannin's command, on which such party's name appeared, certified to by the Adjutant General as a correct copy of an instrument filed in his office, was admissible in evidence under art. 2308, Rev. Stats.

6.—Same—Harmless Error.

Where the date of the arrival in Texas of Captain Shackelford's company of Alabama volunteers (in 1836) was shown by undisputed testimony, the exclusion of proof of such date by Foote's History of Texas, if error, was harmless.

7.—Evidence—Historical Treatises.

Historical treatises involving matters of general interest may be admitted in evidence, but as to matters of a private nature that affect only a few individuals, they are not ordinarily admissible without proof of such matters.

Appeal from the District Court ⌐⌐ Haskell.   Tried below before Hon. H. R. Jones.

*H. G. McConnell* and *W. M. Walton,* for appellants.—1.   The testimony of D. C. Giddings, that it was the common opinion and belief that George Whitfield Brooks served in the Texas-Mexican war was hear-·say and inadmissible.   Bryan v. Wallace, 87 Texas, 510; Williams v. Dean, 5 Texas Civ. App., 575; Newton v. Alexander, 44 S. W. Rep., 416.

2.   The copies of papers from the Comptroller's office were objected to because the execution of the original had not been proven under the common law; were ex parte statements and affidavits not admissible in evidence by any rule of law, defendants not having had opportunity to cross-examine the witness; and the certified copies were therefore incompetent and irrelevant in proving any fact shown from the papers. Sayles' Civ. Stats., arts. 2306, 2308; Robertson v. DuBose, 76 Texas, 13.

*S. W. Scott* and *P. H. Swearingen,* for appellee.—1.   Identity, like marriage, can be proven by common repute, and is one of the exceptions to the rule excluding hearsay testimony.   1 Greenl. on Ev., 16th ed., secs. 140b, 140c; Byers v. Wallace, 87 Texas, 510; Turner v. Sealock, 54 S. W. Rep., 358; Lewis v. Bergess, 54 S. W. Rep., 609; Brown v. Brown, 36 S. W. Rep., 918; Schott v. Pellerim, 43 S. W. Rep., 945; Nehring v. McMurriam, 94 Texas, 51; Hickman v. Gillum, 66 Texas, 316; Greening v. Keel, 72 Texas, 208, 84 Texas, 327; Auerback v. Wylie, 84 Texas, 618; Minor v. Lumpkin, 29 S. W. Rep., 800, 53 S. W. Rep., 365.

2.   The application of Whit Brooks for pension, the supporting affidavits thereto, the certificate of Barnard E. Bee entitling Geo. W. Brooks to pay as a private in Captain Jack Shackelford's company, and the endorsed wrapper attached together, were all parts of an archive of the Comptroller's office.   The recitals therein were admissible to prove identity.   Halbert v. De Bode, 28 S. W. Rep., 59, 60; Chamblee v. Tarbox, 27 Texas, 139; Ingram v. Walker, 26 S. W. Rep., 477; McNeil v. O'Connor, 79 Texas, 231; Talbert v. Dull, 70 Texas, 679; Hickman v. Gillum, 66 Texas, 316; Byers v. Wallace, 87 Texas, 510; Minor v. Lumpkin, 53 S. W. Rep., 365; Baker v. McFarland, 77 Texas, 295; Burkett v. Scarborough, 59 Texas, 495; Lewis v. Bergess, 54 S. W. Rep., 609.

NEILL, ASSOCIATE JUSTICE.—This is the second appeal in this case: The first was by the present appellee from a judgment rendered against him in favor of the present appellants.   The opinion on that appeal was by the Court of Civil Appeals of the Second District, and is reported in 73 S. W., 1068.   In the opinion Chief Justice Conner thus states the case and matter in controversy between the parties:   "Appellant" (now appellee) "was the plaintiff below, and, in the right of his wife, is entitled to recover all the interest ever had or held by George Whitfield Brooks, who died in Washington County, Texas, in 1882, in the nine hundred and sixty acres of land situated in Haskell County which is the subject-matter of this suit.   Appellees" (the present appellants)

"are entitled to whatever interest, if any, in said land, that was ever had or held by one George Washington Brooks, of De Witt County, Texas, who died in 1885; the vital issue in the case being one of identity."

The land was located and patented by virtue of bounty land warrant No. 3102, issued to George W. Brooks by the Republic of Texas, for three months' military service from December 12, 1835, until March 10, 1836. Was the George W. Brooks to whom the warrant was issued, George Whitfield Brooks, under whom appellee claims the land? This question was submitted to the jury, and, upon evidence reasonably sufficient to support the answer, was decided in the affirmative. Therefore, the judgment in favor of appellee ought to be affirmed, unless there be some error assigned requiring its reversal.

*Conclusions of Law.* 1. This interrogatory: "If you do not know of your own personal knowledge that he (meaning George Whitfield Brooks) served in the Texas-Mexican war, and do not know what time he served of your own personal knowledge, please state whether or not Mr. Brooks was generally believed to have had such service. State what was the common opinion in the community in which he lived, if you know, and also state what service he claimed to have performed in the Texas-Mexican war," propounded by plaintiff to D. C. Giddings, and answer to it: "I have no personal knowledge that he served in the Texas-Mexican war, or of any battles that he participated in. It was the common opinion and belief that he served in the Texas-Mexican war," were read in evidence over defendants' objection that the testimony was hearsay.

We don't think that the assignment of error predicated upon the admission of the answer in evidence is well taken. From the very nature of the issue presented in this case, it was essential for plaintiff to prove that George Whitfield Brooks, under whom plaintiff claims the land, served as a soldier in the Texas-Mexican revolution. Sixty-eight years from its termination had elapsed when this case was tried; Brooks was dead, as were most of the soldiers of the revolution, and as it was almost impossible, if not entirely so, to prove directly the fact of his service by living witnesses, such proof had to be made by circumstances. A great number of circumstances strongly tending to show the fact that he served as a soldier in the Texas-Mexican revolution and that the certificate by virtue of which the land in controversy was located was issued him for such service, were introduced in evidence. The witness Giddings had testified that he came to Texas in the fall of 1852. That he lived in Brenham, Texas, and there knew G. W. Brooks, commonly called Whit Brooks, who was associated there with C. C. Hemming in business, and that it was generally understood that Whit Brooks was a veteran in the Texas-Mexican war. A number of other witnesses had testified to the same general understanding in Brenham in regard to Whit Brooks. The testimony as to this general understanding was admitted without objection, and it is, in effect, the same as the answer of Giddings which is the subject of this assignment, and for this reason, if for no other, it should be overruled. But it seems to us that, after such great lapse of time. and after those who could have testified of their own knowledge are dead, the general opinion of those where a

man lived and was known for years, that he served as a soldier in that war, is admissible as evidence tending to show the fact of such service. The evidence shows that Whit Brooks lived in Washington County, Texas, from the termination of the war of the revolution up to the time of his death. And it seems that it would have been impossible for him to have established and maintained the reputation of having been a soldier in that war if it were not a fact that he was.

2. The following testimony of the witness J. E. Wallis: "I remember to have heard my father often speak of Whitfield Brooks being brave and daring to want to go to the war while so young," which is made the basis of the second assignment of error, if inadmissible as evidence, could not, in view of the other testimony of the witnesses, have prejudiced the defendants. The witness testified that had lived in Texas fifty-four years and was personally acquainted with G. W. Brooks, and that he was generally called Whit Brooks and lived in Washington County, Texas. That he was acquainted with his (Brooks') family. That there were three Brooks in that county, viz, Milton Brooks, Zach Brooks, and Whit Brooks; that he knew G. W. Brooks (Whit) and his brother; each served in the Texas-Mexican war; that the time they served was 1835-36. After testifying to these facts he also testified as follows: "The fact that they (Zach and Whit Brooks) served in the Texas-Mexican war was a matter of common repute and general knowledge in the community in which they lived when I knew them after their return from said war. I have heard them relate their experience in the war referred to, and it was also a universal recognized fact in the community of Washington County that they served in said county. . . . My father's family came from North Alabama. Knew this family of Brooks either in North Alabama or across the line in Tennessee before they came to Texas, and when our family came to Texas we were glad to find them in Washington County, as we had heard before leaving Mississippi and Alabama that they had come out successfully in not being killed in the Mexican war, and we were glad to find them when we moved to Washington County. We then lived near each other for a number of years in Washington County. I do not know what States they were natives of, but I think that they were born either in Northern Alabama or across the line in Tennessee. I do not know the dates of their birth. When I came to Texas in the winter of 1848-49 G. W. Brooks (Whit) who was the youngest of the three brothers, must have been fifteen or twenty years older than I was; that is to say, he must have been somewhere between thirty and thirty-five years old at that time. The other brothers were older."

In answer to cross-interrogatories propounded by defendants he testified: "My answer to the question as to where G. W. Brooks and the Brooks family came from, were given from general knowledge on the subject in the community where he lived, and from his general reputation. My father also knew the family in North Alabama before they came to Texas. My answer to the direct interrogatories as to the reminiscences of the Texas-Mexican war in regard to G. Whit Brooks is also given from general knowledge on the subject in the community where he lived and from his general reputation. I have also often heard

it related by G. Whit Brooks and his brother Zach Brooks, as well as by their many friends and others in the community."

This witness Wallis was sixty-eight years old when he testified; came to Texas in 1848 and reached Washington County in February or March, 1849, where he resided until the close of the war in 1865.

The testimony we have thus recited of the witness J. E. Wallis, together with testimony of the same character from other witnesses, tends strongly to show that G. Whit Brooks served as a soldier in the Texas revolution, and that the certificate by virtue of which the land in controversy was located, was issued to him for such services. If he did so serve, the undisputed testimony shows that he was quite young while in such service. We think, therefore, that the testimony complained of by the assignment under consideration, could in no way have prejudiced appellant, for what the witness heard his father say of Whitfield Brooks "being brave and daring to want to go to the war while so young," was simply an expression of his opinion of the young soldier's traits of character which, while it would be endorsed by most every one, is immaterial to any issue in the case, for it would make no difference whether Whit was brave and daring in wanting to go to the war while so young. The question is, did he go? All the testimony tends to show that he did, and that he received the land certificate as a reward for his services.

3. The testimony of Mrs. M. E. Swearingen to the effect that she knew her husband, P. H. Swearingen, during their married life bought the nine hundred and sixty acres of land in Haskell County from Whit Brooks, and that by refreshing her memory by referring to the deed she recalled, without aid of the deed, the fact that her husband bought the land from him in 1872, which is complained of in appellants' third assignment of error, was admissible to identify Whit Brooks as the claimant of the land at the time it was conveyed. Besides, such testimony in connection with other testimony tends to show that the land was claimed by Whit Brooks from the time it was located down to the time he conveyed it to witness's husband, who claimed it until his death, after which it was claimed by his estate and then allotted to his daughter, Mrs. Halsted, in whose interest this suit is prosecuted by her husband. And there is other testimony showing that neither the certificate nor the land was ever claimed by George Washington Brooks or by his heirs until just prior to the institution of this suit.

4. The application of George Whitfield Brooks for a pension under the Act of August 13, 1870, the supporting affidavit thereto, the certificate of Barnard E. Bee, entitling George W. Brooks to pay as a private in Capt. Jack Shackelford's company, and the endorsed wrapper attached thereto, the introduction of which in evidence is complained of by the fourth assignment of error, were all parts of an archive of the Comptroller's office. For J. H. Walker, chief clerk of the Comptroller's office, who in the absence of the Comptroller had custody of all the papers of the office, testified that such documents, which were attached to his depositions, were archives in that office. Therefore, they were admissible as evidence, in connection with other testimony, as tending to show that George Whitfield Brooks is the same person to whom the certificate by virtue of which the land in controversy was issued. Cham-

blee v. Tarbox, 27 Texas, 139; Halbert v. De Bode, 28 S. W. Rep., 59; McNeill v. O'Connor, 79 Texas, 227; Talbert v. Dull, 70 Texas, 675; Byers v. Wallace, 87 Texas, 503; Baker v. McFarland, 77 Texas, 295; Minor v. Lumpkin, 53 S. W. Rep., 365.

5. The muster roll of Fannin's command, on which appears the names of G. W. Brooks and Z. M. Brooks as privates in Capt. Jack Shackelford's company of Alabama volunteers, a true copy of which is certified to by Thomas S. Scurry, Adjutant-General, as a correct copy of an instrument in writing filed in his office purporting to be a list of officers and men of Col. Fannin's division, the introduction of which in evidence is complained of by appellants, was admissible in evidence under article 2308, Revised Statutes, and, in connection with other testimony introduced (it not being claimed by appellants and there being no evidence tending to show that George Washington Brooks under whom they claim, was ever a member of Capt. Jack Shackelford's company) as tending to show that George Whitfield Brooks, under whom appellee claims title to the land in controversy, was the man whose name appears as a private soldier in Capt. Jack Shackelford's company of Col. Fannin's division. Stone Land & Cattle Co. v. Boone, 73 Texas, 553; McNeill v. O'Connor, supra.

6. The following testimony of C. H. Allen, one of defendants in this case, taken at a former trial: "I told Mrs. Sue Brooks how to recover the six hundred and forty acres of George W. Brooks's donation land. I charged her nothing for the information except to secure from her a contract to recover her one-third league. George Whit Brooks was dead when I secured patent to a part of the one-third league certificate in 1889," was introduced by appellee over the objection of appellants that it was irrelevant and immaterial. "Mrs. Sue Brooks" referred to in Allen's testimony, was the widow of George Whitfield Brooks, and was known to be his widow by Allen when he told her how to recover the six hundred and forty acres of George W. Brooks's donation land and contracted with her to recover her one-third league. We think, therefore, that the testimony was relevant as tending to show that the George W. Brooks who received the six hundred and forty acre donation was the identical George Whitfield Brooks under whom appellee claims the land in controversy and that the certificate by virtue of which it was located was issued to him and not to the George W. Brooks under whom appellants claim. Minor v. Lumpkin, 29 S. W. Rep., 800.

7. The testimony complained of in the seventh assignment was also admissible upon the question of identity.

8. Appellants' bill of exceptions does not support their eighth assignment of error, which complains of the court's refusing to allow them to read in evidence from Foote's History of Texas, vol. 1, pp. 240-247. It shows the court ruled "that said contents of said history was admissible insofar as the dates were concerned, viz, the date of Fannin's surrender, March 19, 1836, and the date of the massacre, March 27, 1836, and admitted said substance of said history as to said dates, but ruled the remainder out." These were the only matters of general interest shown by the portion of the history offered in evidence, unless it be the date that Capt. Jack Shackelford arrived in Texas

in command of the Red Rovers. This date was by the undisputed testimony shown to be the 19th day of January, 1836, which is the same as that shown by the history. Therefore, the exclusion of the history as to it could not have prejudiced appellants. The rule seems to be that historical treaties involving matters of general interest may be admitted in evidence, but as to matters of a private nature that affect only a few individuals, they are not, ordinarily, admissible without proof of such matters. If the date of the arrival of Capt. Jack Shackelford's Red Rovers in Texas is a matter of such general interest as to be proven by historical treaties, such date as was shown by the history offered being without dispute as to it, appellants were not prejudiced by the exclusion of the history as evidence of it.

9. The charge of the court clearly and succinctly, in accordance with the opinion on the prior appeal, submitted issues of fact to the jury, and the court did not err in refusing to give any of the special charges requested by appellants.

There is no error in the judgment requiring its reversal, and it is affirmed.

*Affirmed.*

Writ of error refused.