James Bailie et al. v. Western Live Stock & Land Company.

Decided April 28, 1909.

**1.—Identity—Similarity of Names—Evidence.**

Similarity of names is ordinarily sufficient to establish identity of persons whose names appear in a chain of title where there is nothing in the evidence to cast suspicion on the case; but in a suit of trespass to try title to a tract of land claimed by plaintiffs and defendant under ancestors having the same or similar name as the original grantee, evidence and the absence of evidence considered, and held sufficient to justify the trial court in giving a peremptory instruction against the plaintiffs.

**2.—Identity of Persons—Evidence—Probate Proceedings.**

The issue being one of identity of persons, statements made in an application for administration upon the estate of one of the decedents, and in the orders of the probate court, were admissible in evidence upon said issue.

**3.—Administration—Land Certificates.**

Land certificates issued by the Commissioner of Claims to the heirs of Thomas J. Robinson under and by virtue of a Special Act of the Legislature in February, 1860, were not intended as a donation to said heirs, but became and were the property of the estate of said Robinson, subject to sale by the administrator of said estate.

**4.—Evidence—Copies from Land Office.**

Certified copies from the Land Office of a petition to the Legislature to pass a special Act authorizing the Commissioner of Claims to issue land certificates to the heirs of a soldier killed in the Texas Revolution, together with supporting affidavits accompanying said petition, were competent evidence in a suit concerning the title to the land located by virtue of said certificates.

Error from the District Court of Bexar County. Tried below before Hon. A. W. Seeligson.

*F. G. Morris, Howell Johnson* and *Storms & Storms,* for plaintiffs in error.—The land certificate in question having been granted by special Act of the Legislature to the heirs of Thomas J. Robinson, after all laws under which he or his heirs could have obtained land for his early immigration to Texas or for military service had expired or been repealed, however meritorious the consideration that constituted the moving cause for making the grant, was a donation to the heirs as such, and was not assets in the hands of the administrator of Robinson's estate, and hence the sale thereof by the administrator passed no title to the certificate. Leonard v. Rives, 33 S. W., 291; Causici v. La Coste, 20 Texas, 285; Grant v. Wallace, 60 Texas, 350; McKinney v. Brown's Heirs, 51 Texas, 94; Wright v. Nona Mills Co., 98 S. W., 917; Paschals' Digest, art. 1144.

As all laws under which Thomas J. Robinson could have obtained land certificates for immigration or military service expired September 1, 1858, neither Robinson nor his heirs, if dead, had then any right to land inchoate or otherwise, and as the application for letters of administration affirmatively shows that there was no other property and that the sole object of opening an administration was to apply for a special Act certificate, to which the estate had no right, there was no estate upon which to open administration, and therefore the order

purporting to open administration upon such supposed estate was void, and the probate court, therefore, acquired no jurisdiction, and did not acquire any jurisdiction over certificates for land afterwards issued merely by their being inventoried in a void administration. Paschal's Dig., art. 1144.

The administration was void because decedent, according to the petition for letters of administration, was a deceased soldier of the Texas and Mexican war, and had no fixed place of residence, and that the lands he had been entitled to were due him as a soldier. Paschal's Digest, arts. 1400 to 1403; Duncan v. Veal, 49 Texas, 603; Paul v. Willis, 69 Texas, 261.

There was no law authorizing the filing in General Land Office of the petition and affidavits addressed to the Legislature for the purpose of inducing a grant by special Act of the Legislature of land certificates to the heirs of Thomas J. Robinson, and therefore said document never became archives of the General Land Office, and not being archives of that office certified copies thereof were not admissible in evidence in the trial of this cause. Rogers v. Pettus, 80 Texas, 425; Rev. Stats. of 1895, art. 67.

Revised Statutes, article 63, which follows article declaring what are archives of the General Land Office, reads as follows: "Nothing in the preceding article shall be construed to give to any of said books, records, or other papers named in said article any greater force or validity by reason of their being so recognized as archives of the General Land Office than was accorded them by the laws in force at the date of their execution and deposit."

*Denman, Franklin & McGown*, for defendants in error.

FLY, Associate Justice.—This is an action of trespass to try title to 1,280 acres of land, patented by the State of Texas to the heirs of Thomas J. Robinson, instituted by plaintiffs in error, who will be denominated plaintiffs hereinafter, in Pecos County, but the venue was changed to Bexar County by agreement of the parties. Defendants in error, defendants in the lower court, pleaded not guilty and limitations of three, five and ten years. The cause was heard by a jury and a verdict instructed for defendants.

All the parties claim title through an Act of the Legislature of 1860, which authorized the issuance of land certificates by the Commissioner of the Court of Claims to the heirs of Thomas J. Robinson, for one-third of a league headright, 320 acres bounty, and 640 acres donation. A patent was issued to the heirs of said Robinson on July 23, 1868.

The only evidence of heirship offered by plaintiffs was the testimony of James Bailie and Hugh Robinson. The former swore that he was a native of Ireland and 73 years of age, that his mother had, among others, a brother named Thomas Robinson, under whom plaintiffs claim; that witness first knew him personally in 1847 in Ireland. That said Thomas Robinson had been in the United States prior to that and said he was going to Texas. The witness did not know when Thomas Robinson first came to Texas, but thought it must have been

in 1835, about the time his brother came. The witness came to Texas in 1852, and went back to Ireland in 1857, when his mother told him about his Uncle Thomas. Witness went to Ireland again in 1868, and his mother asked him about property belonging to Thomas, and witness on his return hunted up some of his uncle's property and sold it. The witness swore that his Uncle Thomas died in 1852 and was buried at Mission Valley, about 18 miles above Victoria. Witness never saw his uncle in Texas. The other witness, Hugh Robinson, swore that his sister told him that their uncles came to Texas and owned land here and his Uncle Thomas came at an early day. Witness never saw him, and never heard of the land until the suit was brought. The sister who told the witness about the uncles knew nothing about Thomas Robinson except what her mother told her. None of the plaintiffs had ever paid taxes on the land. The witness Bailie did not know by hearsay, family tradition or otherwise when Thomas Robinson came to Texas; the only thing that he would swear to in that connection was, "it must have been about the time the others came—the time James Robinson came—I suppose the time his brothers came in 1835. I don't know of my own knowledge, though, when he came to Texas." He also said, as to his conversation with his mother: "She told me when he came here, and if I remember right he must have come with James Robinson, who came in 1835." He did not swear that his mother told him Thomas Robinson came to Texas in 1835.

Mere identity of names between the uncle of Bailie and the person to whose heirs the Legislature gave a land certificate, it will be seen from the testimony, must be relied on to establish any connection between plaintiffs and the land in controversy. It is held, however, that similarity of name is ordinarily sufficient to establish identity of a person whose name appears in a chain of title, where there is nothing in the evidence to cast a suspicion on the case. (Chamblee v. Tarbox, 27 Texas, 140; Robertson v. DuBose, 76 Texas, 1; McNeil v. O'Connor, 79 Texas, 227.)

On the trial of the case defendant introduced in evidence certain orders made in the administration of the estate of Thomas J. Robinson, in Falls County, Texas, in connection with the sale of the land certificate granted by the Legislature of Texas to the heirs of Thomas J. Robinson, which orders were objected to by plaintiffs, but, upon the objections being overruled, plaintiffs, without waiving their objections to the aforesaid orders of the Probate Court, introduced a transcript of the entire proceedings of the court in the administration of said estate. Among the matters introduced by them was the application for letters of administration in which it was represented that "Thomas J. Roberson" died in 1836. That discrepancy in the spelling can cut no figure, however, for in the order granting the administration, which was also introduced in evidence, the estate is described as that of Thomas J. Robinson, and in all of the orders of the court it is so designated.

It has been held in this State that statements made by administrators in applications to the Probate Court, which tend to identify the person whose estate is being administered, are admissible as bear-

ing on such question of identity. (Byers v. Wallace, 87 Texas, 503; Minor v. Lumpkin (Texas Civ. App.), 53 S. W., 364.) Now, in the copy of the application for letters of administration, which plaintiffs introduced in evidence, it is asserted that the Thomas J. Robinson whose estate was sought to be administered had died in 1836, and in an order of the court which, as will hereinafter appear, we think was admissible in evidence, it is stated that the special Act of the Legislature under which plaintiffs necessarily claim was procured at the instance of the same administrator who made the application. The legislative grant was therefore made to the estate of a man who was represented to have died in 1836, and, consequently, could not have been the Thomas Robinson under whom plaintiffs claim, because he was in Ireland in 1847, and died in 1852.

If the evidence of identity found in the probate proceedings had no other effect, they cast a suspicion upon the evidence of identity afforded by a similarity of names. Not only did those papers create a suspicion as to the identity of Thomas Robinson with Thomas J. Robinson, to whom the certificates were issued, but the failure to show by any paper, muster roll or person that Thomas Robinson was in Texas in 1836, destroys any *prima facie* case made by the similarity of names, and justified an instruction in favor of defendants. Wigmore on Evidence, section 2529, and authorities cited in notes.

On February 7, 1860, a week before the special Act of the Legislature granting authority to the Commissioner of Claims to issue certificates to the heirs of Thomas J. Robinson, was passed, the Legislature recognized the validity of claims for land certificates in favor of those "entitled to a headright under the colonization laws of Coahuila and Texas, or under any law enacted by the Congress of the Republic or State of Texas, who has not heretofore received a valid grant, certificate or patent in virtue of said claim, may apply to the Commissioner of Claims, under the regulations prescribed in this Act, at any time before the first day of June, 1861, and if entitled, receive a certificate therefor." The Act applied, among others, to those who had died before or since January 1, 1846. The right to the certificates was therefore in existence at the time of the passage of the special Act, and without its aid certificates could have been obtained by the administrator of the estate of Thomas J. Robinson. The inchoate right to the certificates was then in the estate of Thomas J. Robinson and the special Act did not take the property away from the estate and make a donation of it to the heirs. The language of the special Act provides for the issuance of a headright certificate which was only granted for services performed to the Republic of Texas. There is nothing to indicate that the Legislature intended to make a donation to the heirs of Robinson, but on the other hand it was merely a renewal of an obligation owed by the State to the defenders of the Republic. The authority given the Commissioner of Claims to issue the certificates is conditioned on proof that certificates had not theretofore been issued. The certificate was the property of the estate, and the court properly considered the order directing its sale and the deed of the administrator conveying the same. (Todd v. Masterson, 61 Texas, 618.) The only objections to the evidence relied upon in

the brief are that the administration was of the estate of *Roberson,* and not that of Robinson, and that the land certificate never belonged to the estate. These objections have been fully considered and, we think, answered.

The petition for administration alleges that Robinson died in 1836; "that he left inchoate and imperfect rights to lands, bounty warrants, etc., etc., due him as a soldier of the Revolutionary War which can not be allowed without the aid and intervention of an administrator." And further it was alleged: "Petitioner would further state that he has been requested by the legal heirs of said decedent to take the necessary steps to secure said rights." If it be held that these allegations did not show any right or authority for administration, and that the proceedings were therefore void, still the proceedings in administration would be admissible on the question of identity. (Byers v. Wallace, 87 Texas, 503.)

We are of opinion that the plaintiffs failed to prove the identity of Thomas Robinson with Thomas J. Robinson, to whom the certificate was granted, and that if the administration on the estate was void, and the property did not pass out of the heirs of Thomas J. Robinson, that plaintiffs could not recover. Upon them rested the burden of proving title to the land, and they must recover, if at all, upon the strength of their title and not on the weakness of that of defendants.

While not essentially necessary, yet in compliance with the terms of the statute requiring Courts of Civil Appeals to pass upon all the contested points in a case, we proceed to consider the admissibility of certified copies of certain papers in the General Land Office.

The defendant introduced in evidence a copy of a petition to the Legislature of Texas to issue to the heirs of Thomas J. Robinson headright, bounty and donation certificates, in which it was stated that Robinson was a soldier of the Texas Revolution and had been killed in August, 1836. Accompanying the petition were the affidavits of different parties showing the facts stated in the petition. The copies of the petition and the affidavits were made and certified to by the Commissioner of the General Land Office from the originals on file in his office. If those papers were admissible in evidence, there can be no doubt of the propriety of the action of the court in instructing for defendants, even though the case of plaintiffs was sufficient to go before the jury before that proof was made.

The Act of the Legislature in granting authority to the Commissioner of Claims to issue land certificates to the heirs of Thomas J. Robinson was not a common nor usual legislative action, and it can be readily inferred or presumed that when the authority was granted to the Commissioner that the evidence upon which it was based would be transmitted with the warrant of authority to him, for his guidance in delivering the certificate if granted by him, and also in determining, as was required of him in the special Act, as to whether any certificate had ever been granted to Robinson or his heirs. If this position be tenable, and we think it more than probable, then it can readily be seen how the papers passed into the custody of the Land Commissioner, for by an Act of February 7, 1860, it was made the duty of the Com-

missioner of Claims to deliver to the Land Commissioner in 1862 all papers, books and archives belonging to the office of Commissioner of Claims, not pertaining to the auditor's office, and such papers, books and archives were declared to be the archives of the General Land Office. The papers were public documents, not private papers, and pertained to the public lands of the State. They were the foundation upon which the Commissioner of Claims acted in issuing the certificates; they served as evidence to him in the investigation enjoined upon him by the special Act of the Legislature. The leading fact in connection with the issuance of the certificates was as to whether Thomas J. Robinson had received the land to which he was entitled, and had there been any file mark on the papers showing that they had been in the possession of the Commissioner of Claims, no doubt as to certified copies of them being permissible could be entertained. (McNeil v. O'Connor, 79 Texas, 227.)

The documents referred to being instruments connected with a land title, the evidence upon which authority was granted by the Legislature to issue a land certificate, were certainly permitted, if not required, by law to be filed in the archives of that branch of the government to which the custody of such records was confided, and if so permitted they were within the purview of articles 62 and 2308, Revised Statutes. (Rogers v. Pettus, 80 Texas, 425.) The papers showed the consideration on which authority to the Commissioner of Claims was given, and must have accompanied the certified copy of the Act which was the warrant of authority for issuing the certificates.

With those certified papers before the court, the proof was overwhelming that the land certificate was not granted to the heirs of the man, Thomas Robinson, who died in Mission Valley in 1852. The judgment is affirmed.

*Affirmed.*

Chief Justice James did not sit in this case.
Writ of error refused.