BLUNT et al. v. HOUSTON OIL CO. et al. †

(Court of Civil Appeals of Texas. Galveston. Feb. 19, 1912. Rehearing Denied March 14, 1912.)

1. ADVERSE POSSESSION (§ 113*)—EVIDENCE—ADMISSIBILITY—DEEDS.

Where, in trespass to try title, the evidence raised the issue whether the original grantee had either made a verbal conveyance of the land prior to a certain date, or had given a written deed subsequent thereto, to one under whom the defendants claimed, deeds tending to show a continuous assertion of title in the defendants and those under whom they claimed for more than 50 years were admissible to support a presumption that such conveyance had been made.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 669–681; Dec. Dig. § 113.*]

2. JUDGMENT (§ 712*) — CONCLUSIVENESS — EVIDENCE OF TITLE.

In trespass to try title, a judgment in a former proceeding was admissible to show the claim of a predecessor in title of the defendants, and also as a link in the chain of title to part of the land in controversy, though none of the plaintiffs were parties to the former proceedings.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1233; Dec. Dig. § 712.*]

3. DISMISSAL AND NONSUIT (§ 42*) — PROCEEDINGS AFTER VOLUNTARY NONSUIT.

After a voluntary nonsuit taken by intervenors, the court cannot dispose of their rights upon a plea thereafter filed, asking for affirmative relief against them except upon prior citation to them.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 75–83; Dec. Dig. § 42.*]

4. JUDGMENT (§ 495*) — COLLATERAL ATTACK—PRESUMPTION.

On collateral attack upon a judgment involving the title to land, which judgment gave affirmative relief against intervening parties who took a nonsuit, it will be presumed that the pleadings asking affirmative relief against the intervenors were filed before their nonsuit was taken.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 933, 934; Dec. Dig. § 495.*]

5. DISMISSAL AND NONSUIT (§ 19*) — EFFECT.

While a voluntary nonsuit removes the parties taking it out of the case so far as their own cause of action is concerned, it has no ef-

fect upon proper pleadings for affirmative relief previously filed against them.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 33–36; Dec. Dig. § 19.*]

6. JUDGMENT (§ 495*) — COLLATERAL ATTACK—BURDEN OF PROOF—INVALIDITY OF JUDGMENT.

The burden was upon parties collaterally attacking a prior judgment to establish its invalidity.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 933, 934; Dec. Dig. § 495.*]

7. NAMES (§ 18*) — PRESUMPTION — IDENTITY OF PERSONS—SIMILARITY OF NAME.

Similarity in name is alone sufficient to establish identity of a grantee in the absence of evidence to the contrary, but not when the evidence puts in issue the question of such identity.

[Ed. Note.—For other cases, see Names, Cent. Dig. § 17; Dec. Dig. § 18.*]

8. TRIAL (§ 194*)—INSTRUCTION—WEIGHT OF EVIDENCE—IDENTITY OF PERSONS.

In trespass to try title, an instruction that "when the question of identity of persons arises in a case, a mere identity of names is not sufficient, but the evidence must go further and show by other facts and circumstances, taken in connection with the name, the identity of the person referred to," was not upon the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

9. TRESPASS TO TRY TITLE (§ 45*)—APPEAL AND ERROR (§ 1064*)—INSTRUCTION—EVIDENCE—IDENTITY OF PERSONS.

Nor was such instruction misleading or prejudicial to the plaintiffs, where there was much evidence, independent of the identity of names, upon the issue of the identity of their ancestor with the original grantee.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 67; Dec. Dig. § 45;* Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

10. APPEAL AND ERROR (§§ 757, 742*)—BRIEF—ASSIGNMENTS.

Assignments relating to the refusal of requested instructions were not reviewable when the instructions were not set out in the brief, either in form or in substance, and the assignments were not followed by proposition or statement.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3092, 3000; Dec. Dig. §§ 757, 742.*]

11. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS—SUFFICIENCY.

Where a statement of evidence set out only part of the evidence upon a controverted issue of identity of persons, it was insufficient to authorize the consideration of an assignment relating to the refusal of a new trial sought on the ground that the overwhelming weight of the evidence established such identity.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

12. APPEAL AND ERROR (§ 742*) — ASSIGNMENT—SUFFICIENCY.

A statement of evidence under an assignment of error was insufficient where it did not include all the evidence upon the particular issue involved, but referred to a statement under a different proposition wherein the evidence upon all the issues was attempted to be set out.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

─────────

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

Appeal from District Court, Tyler County; W. B. Powell, Judge.

Action by John W. Blunt and others against the Houston Oil Company and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Chas. S. Todd and Joe W. Thomas, for appellants. Wear, Orgain & Butler, J. A. Mooney, Andrews, Ball & Streetman, John S. Stewart, and Spotts & Matthews, for appellees.

REESE, J. In this case John W. Blunt and others sue in trespass to try title to recover a league of land granted to James Blunt by the government of Coahuila and Texas, March 20, 1835, and damages for cutting timber. Plaintiffs allege that they are all of the known surviving heirs of the original grantee. The defendants to this suit are the Houston Oil Company, the Kirby Lumber Company, Thompson Bros. Lumber Company, John H. Kirby, and J. R. Chapman. The Houston Oil Company, in addition to general demurrer, pleaded not guilty, and specially pleaded the statutes of limitation of three, five, and ten years. Thompson Bros. Lumber Company also pleaded not guilty. J. R. Chapman disclaimed as to all of the land sued for except two tracts aggregating about 1,000 acres, as to which he pleaded not guilty, and by cross-action set up his title and prayed recovery against plaintiffs. Kirby Lumber Company disclaimed. John H. Kirby pleaded not guilty. Various parties were impleaded as warrantors, who answered. It is not necessary to an understanding of the questions presented by this appeal to refer more specifically to the pleadings. On trial, with the assistance of a jury, the cause was submitted to the jury on certain special issues; the main issue being whether the James Blunt, to whom the land was granted, was the ancestor of plaintiffs, which question the jury answered in the negative. Upon return of the verdict, the court rendered judgment for defendants. Plaintiffs made a motion for a new trial which was refused, and they bring the case to this court on appeal.

The vital issue in the case is that involved in the first issue submitted to the jury, as follows: "Was the James Blunt to whom the league of land in controversy was granted on March 20, 1835, the father and grandfather of the plaintiffs in this case?"

Appellants claimed and introduced evidence tending to show that their ancestor was one James Blunt who came to Texas from Louisiana prior to 1835 and acquired this land under the colonization laws of Coahuila and Texas, and that he was the person to whom the grant was issued. Appellees denied this, but claimed and introduced evidence tending to show that the grantee of the land was a different person who came from North Carolina and settled in Liberty county prior to the issuance of the grant and was the original grantee named in the grant as James Blunt. The grant was extended by Nixon, commissioner of Vehlin's colony, March 20, 1835, the grantee being named in the grant James Blunt, in which name the application was signed.

The issue turned upon the identity of the original grantee with plaintiffs' ancestor, or the person claimed by appellees to have been the grantee. The original grant is to "James Blunt," who signed the application "James Blunt," and it was shown by appellants that their family always so spelled their surname, while a daughter of the James Blount who came from North Carolina and settled in the jurisdiction of Liberty, and was a resident there in 1835, testified that her family spelled their surname "Blount." Other evidence was introduced by appellants tending to show that their ancestor was a colonist in 1835 and was the person to whom the grant was made. Evidence was likewise introduced by appellees which tended to show that the person under whose heirs they claimed title in part was the original grantee. It is not necessary to set out this evidence here, of which there was a great deal introduced in support of each side of this issue. The appellants had the burden of showing by a preponderance of the evidence that their ancestor was the original grantee. In passing upon this issue, the jury found against their contention. There is sufficient evidence to authorize this conclusion and hence, in deference to the verdict, we conclude as matter of fact that he was not.

The findings of the jury upon the other issues were all against appellees, and no questions arising thereon are presented by this appeal except in so far as they affect the rulings upon the admission of evidence as will be shown hereafter.

[1] Appellees traced their title to some of the land or some interest therein back to one Pryor Bryan or Joseph Bryan, and one of the issues submitted to the jury was: "Was there a verbal sale or written conveyance of one-half of the league of land in controversy to Joseph Bryan or Pryor Bryan, or both, by the James Blunt to whom the land was granted?" The jury was further instructed as to the law with regard to verbal sales of land in Texas prior to 1840, and as to the law with regard to the presumption of the execution of a deed. No written conveyance to either of the Bryans was shown. In support of their contention that there was either a verbal sale of the land to one of the Bryans by the original grantee prior to 1840, or some written conveyance since that date sufficient to pass the title, appellees offered in evidence a deed from Bryan to James Welch of an undivided one-half interest in the league executed in 1851, and also a great number of other deeds in the chain of title under this deed all tending to show continuous chain of

title under Pryor Bryan or Joseph Bryan since said date. Evidence was also introduced which tended to show some connection between the original grantee and Pryor Bryan as far back as the inception of the grant. Objection was made to the introduction of the deeds on the ground that they were immaterial and irrelevant and related to matters which were res inter alios acta. The objection was overruled, and appellants excepted, and the ruling of the court is complained of by the first assignment of error.

It is admitted by appellants that, on account of the finding of the jury adverse to the contention of appellees on this issue, the admission of the evidence became harmless as to them, but we are asked to pass upon the assignment in view of another trial. We think there was no error in the ruling of the court. The issue of the presumption of either a verbal sale and conveyance of the land by the original grantee to Bryan prior to 1840, or a written deed subsequently thereto, was clearly raised by the evidence. It is not necessary, as contended by appellants, in order to support such presumption, that there should be in subsequent deeds a recital of or a reference to such deed or verbal conveyance. Such recitals in subsequent deeds is only one of the circumstances which may be looked to in determining the issue. The evidence offered tended to show a continuous assertion of title in appellees and those under whom they claimed for more than 50 years, and was admissible on the issue of presumption referred to. The assignment is overruled.

[2, 3] The judgment in the case of Williamson et al. v. Griffin et al., and pleadings therein, were admissible, if for no other reason, to show claim of title under Pryor Bryan. The judgment was also admissible as a link in the chain of title to some of the land. The objection was that none of the plaintiffs were parties to the suit or bound by the proceedings therein. It was not introduced for this purpose, nor was any contention made that appellants were bound thereby. The assignment is without merit.

In 1900 there was a suit in the district court involving the title to a part of the land in controversy. There were a large number of plaintiffs and also of defendants. Certain of the plaintiffs in this suit intervened in that suit, setting up title in themselves to the land involved as heirs of the original grantee. Some of the defendants in the present suit deraign title under some of the parties, plaintiffs or defendants in that suit, which was styled Heiskell et al. v. Hutto et at. In regard to the plea of intervention, the following proceedings were had: On November 23d, the interveners, as shown by the judgment, "announced in open court that they would no longer prosecute their said petition in intervention and ask that a nonsuit be entered." It was thereupon "ordered

and adjudged by the court that the interveners be nonsuited; and that they have and take nothing by reason of their plea in reconvention, and that all parties interested adversely herein have judgment against said interveners for all costs by them respectively incurred." Further trial of the cause was then postponed until the following week. The judgment then proceeds as follows: "And again on the 29th day of November, 1900, this cause being regularly reached and called for trial and the plaintiffs * * * by and through their attorneys of record announced ready for trial, and the interveners and their counsel being called came not, there being a plea by and in behalf of some of the defendants herein asking for affirmative relief as against them." The judgment then proceeds, reciting the verdict of the jury as to the interveners: "We, the jury, find the claim of the interveners is a cloud upon the title of plaintiffs and defendants" (naming them), and in regular form decrees title to some of the defendants against plaintiffs and interveners for part of the land, and to plaintiffs against defendants and interveners for other parts of the land.

The objection made to this judgment is that interveners having taken a nonsuit and been dismissed from the case, and it not being shown that the pleadings asking for affirmative relief against them had been filed before they took the nonsuit, nor that they had been served with citation as to such pleadings against them, the judgment was void as against them. We agree with appellants' contention that the court, after their voluntary nonsuit, would not have had jurisdiction to dispose of the rights of interveners upon a plea asking for affirmative relief against them thereafter filed, except upon proper citation to them, and it would appear that there was not sufficient time after such nonsuit and before the final judgment to have had such citation issued and served upon them, if such pleadings had been filed subsequent to the taking of the nonsuit, which was taken on November 23d, the final judgment being rendered on November 29th.

[4] But this is a collateral attack upon the judgment, and in such case the existence of every fact necessary to give validity to the judgment will be presumed unless it is otherwise shown by the record. There is nothing in the record to negative the fact that the pleadings asking for affirmative relief were filed before the nonsuit was taken and while the interveners were in court prosecuting their intervention.

[5] The effect of the nonsuit was to take interveners out of the case, so far as concerned their own cause of action against plaintiffs and defendants, and it had no effect upon proper pleadings for affirmative relief against them previously filed. Against this collateral attack it must be presumed as necessary to the validity of the judgment as

against interveners, in the absence of anything in the record to the contrary, that these pleadings referred· to in the judgment were filed before the nonsuit was taken and that therefore, as to these pleadings, interveners were still in court, notwithstanding their dismissal of their own cause of action.

[6] Appellants' contention is, in substance, that appellees must establish the existence of this fact necessary to give validity to the judgment. In this, we think, they are in error. It was necessary for appellants to establish the nonexistence of the fact. Martin v. Robinson, 67 Tex. 379, 3 S. W. 550; Guilford v. Love, 49 Tex. 742; Hardy v. Beaty, 84 Tex. 567, 19 S. ·W. 778, 31 Am. St. Rep. 80.

[7-9] By the fourth assignment of error appellants complain of the following charge of the court given in connection with ˙the first special issue submitted, as to whether the James Blunt to whom the land was granted was the ancestor of plaintiffs: "When the question of identity of persons arises in a case the mere identity of names is not sufficient, but the evidence must go further and show by other facts and circumstances, taken in connection with the name, the identity of the person referred to." The following objections are made to this charge: "(1) It was manifestly on the weight of the evidence and invaded the province of the jury, and that on the most vital issue in the case. (2) It was calculated to confuse and mislead the jury in that they were required to find both other facts and other circumstances in addition to identity of name, and even though they found one additional fact or one additional circumstance, or one additional fact and one additional circumstance corroborative of identity, yet they could not have found for plaintiffs on this issue under this charge, even though convinced of identity. (3) This charge intimated that in the opinion of the judge the evidence was not sufficient to establish the identity of plaintiffs as heirs of the original grantee, James Blunt. (4) The charge gave undue prominence to and laid too great stress upon this issue and the quantum of proof necessary to finding for plaintiffs."

It is contended in the argument in the brief that the proposition stated in the charge is unsound as an abstract proposition, citing Chamblee v. Tarbox, 27 Tex. 144, 84 Am. Dec. 614, Robertson v. Dubose, 76 Tex. 6, 13 S. W. 300, McNeill v. O'Connor, 79 Tex. 230, 14 S. W. 1058, and Leland v. Eckert, 81 Tex. 229, 16 S. W. 897, in support of the contention. We understand the effect of those decisions to be that, where no issue is raised as to the identity of persons, the identity of names is sufficient to establish such identity. For instance, if in a chain of title there be a deed to John Smith, and following such deed one from John Smith, without any further evidence this would be sufficient to show that the John Smith to whom the land was conveyed was the same person who made the succeeding conveyance, and the same rule would apply when plaintiffs claim as heirs of a person named in a deed or grant. In the cases cited, the general doctrine is applied to the facts of the cases, and the case of Leland v. Eckert is ᵥalso applied, where the names were similar, as Colin Bland and Colin De Bland, the evidence showing both names to be used by the same person.

The following from the opinion of the court in Jester v. Steiner, 86 Tex. 419, 25 S. W. 411, states the correct rule applicable to the present case, where the decision of the case turns upon the issue as to the identity of James Blunt, who was plaintiffs' ancestor, with the person of the same name to whom the grant was executed: "Similarity of name is held to be sufficient to establish identity of the person when there is no evidence to the contrary, and no suspicion cast upon the transaction by the evidence; but, in case the identity is controverted, then similarity of name alone is not sufficient to establish such identity. Robertson v. Du Bose, 76 Tex. 1, 13 S. W. 300. It depends upon the issue made by the evidence as to whether.or not the similarity of name is sufficient. McNeil v. O'Connor, 79 Tex. 229, 14 S. W. 1058; Fleming v. Gibney, 81 Tex. 427, 17 S. W. 13. If the issue is that the deed was not executed by the person in question, then the identity of the person is put in direct issue, and, if evidence be introduced tending to prove that the person who executed the deed was not the person in question, similarity of name alone will not be sufficient to establish the fact."

Not only was the evidence sufficient to cast a suspicion upon the identity of plaintiffs' ancestor as the grantee of the land, but it was sufficient to support the finding of the jury that he was not. In view of this evidence, if appellants had introduced no evidence of identity except that afforded by the similarity of the name of their ancestor with the original grantee, we think it clear that the court should have instructed a verdict against them. Stafford v. Kreinhop, 63 S. W. 169. ˙Nor do we think the other objections to the charge are tenable. It was not upon the weight of the evidence. We cannot discover in it any hint of the opinion of the · court as to the effect or weight of the evidence relied upon to establish either side of the issue. Railway v. Pettis, 69 Tex. 690, 7 S. W. 93.

Appellants did not rely alone upon the identity of names, but introduced a great deal of evidence, the tendency of which was to establish the identity of their ancestor with the original grantee in the grant. This evidence was that James Blunt, their ancestor, came to Texas prior to the issuance of the grant, bringing with him his wife and two children, that upon his return he claim-

ed to have acquired by grant or patent a large body of land in Texas, and that he on one occasion exhibited a patent to land to one of the witnesses, and that he often spoke of having received a grant of land in Texas. The evidence along this line, if true, was amply sufficient to have sustained a finding in favor of appellants on this issue, but the jury chose to accept the evidence introduced by appellees, which tended to show that the land was granted to another and different person, whose name was properly James Blount according to the usage of the family in spelling it, but who was a member of Vehlin's colony and a resident of the jurisdiction of Liberty at the time of the issuance of the grant, and who came from North Carolina to Texas, which facts tended to identify him with the original grantee.

In view of the amount of evidence upon this issue, entirely independent of the mere identity of names, we cannot think that the jury was misled by the charge, or that it operated to the prejudice of appellants as stated in the objections set out. We conclude that the assignment presents no sufficient grounds for reversing the judgment.

[10] This disposes of all of the assignments of error which can be considered. The fifth and sixth assignments of error relate to the refusal of the court to give certain special charges requested by appellants. The charges are not set out in the brief, either in form or substance, and the assignments are followed by neither proposition or statement.

[11] The seventh assignment which relates to the refusal of the court to grant a new trial, on the ground that the overwhelming weight and preponderance of the evidence established the identity of appellants' ancestor with the grantee of the land, is not followed by any proposition, and for statement we are referred to the statement under the fourth assignment. This latter statement only purports to be a statement of "some of the evidence of heirship and identity." None of the evidence relied upon by appellees is given. Such a statement is entirely insufficient to authorize us to consider the assignment. We may say, however, that in the consideration of other assignments, and in making up our conclusions of fact, we have examined the record of the evidence sufficiently to enable us to say that, while the evidence is not clear or very satisfactory, on the whole we cannot say that it does not support and authorize the verdict, or that the verdict is against the great weight and preponderance of the evidence.

A difficult task was imposed upon the jury, as triers of the facts, to determine the issue as to these contending claimants, and there is nothing in the record that authorizes us to set aside their finding upon this issue.

Under cross-assignment of error, appellees contend that the undisputed evidence es-

tablished that appellants' ancestor, if he was in fact the grantee of the land, abandoned the country after the issuance of the grant, and thereby the grant became forfeited by the government, ipso facto, without judicial ascertainment, citing Holliman v. Peebles, 1 Tex. 673, Yates v. James, 10 Tex. 168, McKinney v. Saviego, 18 How. 235, 15 L. Ed. 365, and other cases along this line.

[12] This issue was specially submitted to the jury and decided against appellees' contention by their verdict. The statement under the cross-assignment is wholly insufficient to require us to consider it. A proper statement would have included the substance of all the evidence upon this issue, and not merely have referred us to a statement under an entirely different proposition, where the evidence upon all the issues is attempted to be set out. If properly presented, however, the assignment would be overruled. The verdict of the jury upon this issue finds sufficient support in the evidence.

It has been made known to the court, both by agreement signed by the respective parties and by brief of appellants, that appellants and appellee Chapman have compromised their differences, and that, by such agreement, the judgment in so far as it affects the land claimed by Chapman shall be affirmed. In accordance with such agreement, the judgment as to said Chapman is therefore affirmed, irrespective of the errors assigned as to the other appellees.

We find no error in the record which requires a reversal of the judgment as to the other appellees, and it is therefore also affirmed.

Affirmed.